**HANES CORPORATION, a North Carolina Corporation**

v.

**Julien MILLARD et al., Appellants.**

**Nos. 74–1622, 74–1623.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 27, 1975.

Decided Jan. 30, 1976.

---

Walter D. Ames, Washington, D. C., with whom Gary M. Hoffman, Washington, D. C., was on the brief, for appellants.

Robert B. Frailey, Philadelphia, Pa., with whom John F. Smith, Washington, D. C., was on the brief, for appellee.

Before RICHARD T. RIVES,[*] Senior Circuit Judge for the Fifth Circuit and McGOWAN and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

Defendant-appellants in these appeals from the District Court are three French citizens who some years ago assigned a patent to Hanes, the plaintiff-appellee, in exchange for specified royalties. After the patent had expired appellants claimed that they were owed additional royalties under the assignment contract, and two of them initiated contractually-prescribed conciliation and arbitration proceedings. Shortly thereafter, Hanes filed this suit seeking declaratory relief, and after proceedings that we describe in more detail below, obtained a declaratory judgment that any claim, arising from the assignment contract, that appellants might wish to press was barred by the District of Columbia statute of limitations. For the reasons appearing below, we find that the District Court should not have exercised jurisdiction to render this declaratory judgment, and hence we reverse.

## I

At the heart of this controversy is United States Patent No. 2,609,677, covering a technique for weaving hosiery. Issued in 1952, the patent had passed by 1962 into the hands of appellants, and in that year they assigned it to Hanes in exchange for payment of royalties on a specified basis on all hosiery manufactured and sold by Hanes under the patent. Hanes undertook to keep accurate records and render a monthly account of its production. In case of a default in royalty payments, or any other breach by Hanes of its obligations, the appellants were entitled to immediate reassignment of the patent without charge. Article 13 of the contract directed that "[a]ll disputes arising from the interpretation of this contract or issuing from it shall be finally settled according to the rules of conciliation and arbitration of the Chambre de Commerce Internationale through one or several arbitrators nominated in accordance with these rules."[1]

The patent expired on September 9, 1969. Sometime during the first half of 1973, appellants Millard and Manotte, but not Carbonnaux, filed a request for conciliation with the International Chamber of Commerce in Paris in accordance with Article 13. According to Hanes' complaint, appellants' claim is for unpaid royalties during the life of the patent. Hanes contends that the products for whose sale royalties are sought were not covered by the patent,[2] and rather than pursuing conciliation and arbitration, on June 18, 1973 brought suit seek-

---

[*] Sitting by designation pursuant to Title 28 U.S. Code § 293(d).

1. The assignment contract was written in French; the quotation is a translation provided by appellee in Addendum B of its brief. A translation provided by appellants is virtually indistinguishable in substance.

> All differences relating to the interpretation or execution of the present contract or arising therefrom shall be settled finally by the rules of conciliation and arbitration of the International Chamber of Commerce by one

or more arbiters appointed according to this regulation.

J.A. exh. J1.

2. The patent covered a technique for weaving an "unladderable" or run-resistant hosiery fabric from a single thread. The complaint asserts that defendants had claimed that the patent extended to run-resistant fabric made on multifeed knitting machines; plaintiff alleges that it extended only to fabric made on single-feed machines.

ing a declaration that the patent did not extend to the products in question, or, alternatively, was invalid altogether. Jurisdiction was claimed under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970), and 35 *id.* § 293. The latter section provides that a nonresident patentee may file with the Patent Office a designation of a United States resident upon whom process is to be served in litigation involving his patent, but, if no such designation is made, "the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs."

The sequence of events that followed requires a detailed explanation. Apparently no designation had been made by appellants, and service was therefore attempted by registered mail, return receipt requested. *See* Fed.R.Civ.P. 4(i)(1)(D). The letters were sent to the addresses, all in France, which were shown for appellants in the 1962 assignment contract. A copy of the summons was also served on the District of Columbia law firm which more than twenty years earlier had represented the individual who originally obtained the patent and later assigned it to appellants. A member of that firm responded on their behalf on July 26, 1973. Stating that he had been requested by a Maître Robert Colomés of Troyes Cedex, France, to represent appellants in this matter, he asked for an extension of time in which to answer the complaint. His next filing was not an answer but a motion, filed on September 25, 1973, to dismiss or stay the action pending arbitration before the International Chamber of Commerce.[3]

On November 6, 1973, the district judge denied the motion and called a status conference for November 16. At that conference the matter of the statute of limitations was first raised, not by the parties but by the district judge, who instructed the parties to file supplemental briefs on the question by December 20. He took no action on the motion that appellants had filed four days earlier for reconsideration of their request for a stay or dismissal pending arbitration.

On December 20 Hanes filed a supplemental brief, and one day later filed an amended complaint in which a newly-added "Count II" requested the court to declare that any royalty claims by the appellants were barred by the three-year North Carolina statute of limitations, North Carolina being the state in which appellee corporation was registered and the site of the manufacture of the patented fabric. Hanes simultaneously moved for summary judgment on this latter count. Appellants' counsel filed no brief, but instead wrote a letter to the court in which he explained his quandary:

> This letter is written in lieu of the brief requested by Your Honor at the status conference in chambers on November 16, 1973. Unfortunately, the defendants, neither personally nor through their French attorney, have made reply to my repeated requests for instructions and information, which requests have been made by airmail letters and by cablegram since I do not believe that the French attorney speaks English.
>
> I have no idea whether the defendants wish to continue to have my firm represent them or whether they wish to take any additional action in the subject litigation. I probably was in error in ever attempting to contact the defendants, but service of a copy of the Complaint on my firm—albeit improper service—raised a presumption on my part that we had a duty to attempt to preserve defendants' rights.

J.A. exh. S.

On January 2, 1974, appellants' counsel received a further communication from Maître Colomés. Apparently it resolved his doubts at least to the extent of persuading him to continue the defense. On January 11 he did so by filing with the court (1) a

---

3. Filed with the motion were copies of correspondence between the Chamber and Maître Colomés which made it clear that the latter was the attorney through whom conciliation was being sought.

motion to strike Count II of the amended complaint or in the alternative for summary judgment thereon, (2) a memorandum in support of these motions, and (3) a supplemental brief in support of his pending motion to reconsider the denial of a stay or dismissal pending arbitration. On January 31 the district judge denied the motion to reconsider and entered summary judgment on Count II for the plaintiff. His grounds were as follows:

. . . Although the parties have debated the effect of North Carolina's statute of limitations, the Court notes that the relevant statute is actually that of the District of Columbia as litigation forum. (Citation omitted). In any case, both jurisdictions have a three-year statute of limitations for the recovery of a debt on a contract. D.C.Code § 12–301(7); G.S.N.C. § 1–52. Since no legal proceedings with regard to the disputed royalties were commenced within three years of the date on which the last royalty payment was due, the statute of limitations has run and defendants are barred from suing in either North Carolina or the District of Columbia for the recovery of such royalties on the basis of a simple contract claim. (Citation omitted). Defendants correctly note that the statute of limitations with regard to patent infringement has not yet run, 35 U.S.C. § 286, but that does not alter the fact that an action for breach of contract rather than patent infringement can no longer be maintained.

J.A. exh. V. Hanes' claims in Count I regarding the scope and validity of the patent the district judge regarded as "either moot or premature"; they were moot insofar as they related to the threatened contract claims, which he had held could no longer be brought; they were premature insofar as they might relate to patent infringement claims, which had not been threatened.

On February 12 appellants filed two motions attacking the judgment. The first sought dismissal of the amended complaint for lack of personal jurisdiction over appellants and defective service of process. J.A. exh. W. The second was a motion to vacate or amend the January 31st order on the ground that "summary judgment was not based on the evidence of record, did not reach the issue of when the cause accrued," and was granted prematurely in violation of Fed.R.Civ.P. 56(a). J.A. exh. Y. The district court denied these motions on March 8. No. 74–1622 is the appeal taken from the January 31st and March 8th orders.

On April 5, 1974—the same day that they filed the appeal in No. 74–1622—appellants filed a further motion in the district court. This was for vacation of both the January 31st and March 8 orders on the ground that Hanes had fraudulently misled appellants' counsel with respect to service of process upon his clients. To explain, we must retrace our steps momentarily.

Appellants' counsel apparently assumed, perhaps on the basis of his communications with Maître Colomés, that the registered letters by which service was first attempted reached their destinations and that the receipts had been returned. In any case he made no claim based on inadequate service until his February 12 motions. The occasion for his making the claim at that point seems to have been a search of the district court record by one of his associates, who found no trace of any return of service. See J.A. exh. X.

In an affidavit dated March 5, 1974, filed in response to appellants' February 12 motions, Hanes' attorney revealed that in August of 1973 two of the registered letters sent to the three Frenchmen were returned unopened with an indication that the addresses were incorrect. The third letter was not returned, but neither was any acknowledgement of it received. Hanes then undertook, as the affidavit stated, to have process personally served on appellants by a French "Hussier de Justice," a public officer empowered to perform that function under French law. See Fed.R.Civ.P. 4(i)(1)(A). Service was successfully made in this fashion on two of the appellants on October 8, 1973, and on the third on November 12.

Appellants' counsel claims that these events were first made known to him by the March 5 affidavit, and that up to that time Hanes had wrongfully concealed them. It was on this basis that he moved the district court to vacate its January 31st and March 8th orders. The district judge denied that final motion to vacate, and appeal No. 74-1623 followed.

Out of this somewhat confused procedural background, appellants bring us the following claims: (1) appellants were not "patentees" within the meaning of 35 U.S.C. § 293 and the District Court therefore lacked personal jurisdiction over them; (2) service of process was defective; (3) because appellants were not "patentees," no controversy existed with respect to the patent and the District Court therefore lacked subject matter jurisdiction; (4) the grant of summary judgment was improper; (5) the District Court improperly exercised pendent jurisdiction over the state statute of limitations claim; and (6) the District Court improperly exercised its discretion to entertain a suit for declaratory relief. We believe the last of these claims is persuasive and indicates that the District Court's assumption of subject matter jurisdiction was outside the scope of its discretion.

## II

■ There is no absolute right to a declaratory judgment in the federal courts. 28 U.S.C. § 2201 (1970) states only that those courts *"may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added); whether they do so in a particular case is a matter of judicial discretion. *E. g., Zemel v. Rusk,* 381 U.S. 1, 19, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Lampkin v. Connor,* 123 U.S.App.D.C. 371, 360 F.2d 505, 507-09 (1966), and cases cited. The problem in this

case is whether that discretion was properly exercised by the District Court in granting the judgment that it did.

■ It is clear, to begin with, that the grant or denial of declaratory relief by a trial court is subject to review—indeed a quite searching review—at the appellate level. All agree that the exercise of discretion must be a "sound" one. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2759, at 784 (1973), and cases cited. A number of courts and commentators take the view that the customary deference observed with respect to certain district court determinations is not applicable in this context, and that an appellate court can, and should, bring its own judgment to bear. *E. g., Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir. 1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); *Sears, Roebuck & Co. v. American Mut. Liability Ins. Co.,* 372 F.2d 435, 438 (7th Cir. 1967); *Delno v. Market Street Ry.,* 124 F.2d 965, 967-68 (9th Cir. 1942); E. Borchard, Declaratory Judgments 294 (2d ed. 1941); 6A J. Moore, Federal Practice ¶ 57.08[2] (1974). The Supreme Court has not shrunk from fully reappraising the exercise of this discretion by the lower courts. *See, e. g., Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) (per curiam) (vacating declaratory judgment which decided "matters of serious public concern" upon "woefully lacking" record).

As to the principles that govern the exercise of discretion to grant declaratory relief, the purposes such relief may serve and the considerations affecting its propriety are so numerous that a general formulation is difficult.[4] Perhaps the best general guide for the courts is the Supreme Court's instruction in *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948), that

---

**4.** Among the factors relevant to the propriety of granting a declaratory judgment are the following: whether it would finally settle the controversy between the parties; whether other remedies are available *or other proceedings pending;* the convenience of the parties; the

equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided. *See* 10 C. Wright & A. Miller, *supra,* § 2759.

the discretion is to be "exercised in the public interest" and in such a way as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." Also quoted with some frequency is Professor Borchard's "general rule that the declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose." E. Borchard, *supra,* at 307. Finally, this court has placed some emphasis on the likelihood that a controversy—particularly one of questionable vitality—will recur. *Alton & So. Ry. Co. v. International Ass'n of Machinists & Aerospace Workers,* 150 U.S.App.D.C. 36, 463 F.2d 872, 880–82 (1972).

Certainly one of the most common and indisputably appropriate uses of the declaratory judgment procedure is to enable one who has been charged with patent infringement to secure a binding determination of whether proposed conduct will infringe a patent in question without waiting until he becomes the defendant in an actual infringement suit. The purpose of granting declaratory relief to one potentially liable for infringement is to allow him to know in advance whether he may legally pursue a particular course of conduct. The commercial or manufacturing activity he proposes may be of substantial benefit to society, yet it may have to be abandoned if it must be carried out at the risk of liability for patent infringement. Indeed, it was part of the purpose of the Declaratory Judgment Act to prevent patent owners from suppressing competition by threatening infringement without ever actually bringing the suits that would put their patents to the test. *See* E. Borchard, *supra,* at 803–04. The courts have therefore been especially generous in granting declaratory relief to the alleged infringer, anxious, in Learned Hand's much-quoted phrase, that an invalid or overbroad patent claim not "remain in the art as a scarecrow." *Bresnick v. United States Vitamin Corp.,* 139 F.2d 239, 242 (2d Cir. 1943). *See also Broadview Chem. Corp. v. Loctite Corp., supra,* at 1001; *Wembley, Inc. v. Superba Cravats, Inc.,* 315 F.2d 87, 89 (2d Cir. 1963). This is of course only one

way in which the declaratory judgment serves its more general purpose of "avoid[ing] accrual of avoidable damages to one not certain of his rights." *E. Edelmann & Co. v. Triple-A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.), *cert. denied,* 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937). *See generally* E. Borchard, *supra,* at 279–80.

The crucial difference between this patent and others that the federal courts have freely reviewed on a declaratory basis is that this one has expired. No future activity on the part of Hanes will affect the liability it may have incurred during the patent's life. There is no course of action Hanes wishes to pursue the legality of which is uncertain. As far as the patent is concerned, Hanes is simply in the position of one expecting to be sued for past alleged transactions. The question whether activities engaged in by Hanes between 1962 and 1969 fell within the scope of the then not yet expired Patent No. 2,609,677 will never recur. Our case is thus closely analogous to *Channel Master Corp. v. JFD Electronics Corp.,* 263 F.Supp. 7 (E.D.N.Y.1967), in which a declaration of invalidity or non-infringement was sought against a defendant who had been the exclusive licensee under a patent owned by a third party. At the time of suit, the licensee-defendant's rights had already expired, though the patent itself had not. The infringement which the defendant had charged, therefore, occurred during a past period. Declaratory relief was denied on the ground, *inter alia,* that "the plaintiff's liability to the defendant as to future damages if any . . . has now been frozen. A prompt and speedy adjudication of its rights in order to protect it from acting at its peril or avoiding damages in the future is unnecessary." *Id.* at 9.

The classic and most persuasive reason for granting a declaration of patent scope and validity is therefore absent from this case. Hanes is instead in the position of one who desires an anticipatory adjudication, at the time and place of *its* choice, of the validity of the defenses it expects to raise against patent-related claims it expects to be pressed against it. The antici-

pation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse.[5] Thus, as an initial matter, we would be skeptical that a declaratory judgment action relating to an expired patent should be entertained.

With respect to Count I of Hanes' complaint, however, countervailing factors indicate that a "useful purpose" would have been served by granting declaratory relief in this case, if it had been granted as Hanes originally requested it.[6] As the grant of exclusive federal jurisdiction over patent actions makes clear, *see* 28 U.S.C. § 1338(a) (1970), there is a strong interest in having questions of patent scope and validity adjudicated in the federal courts. While there is no obstacle to the state courts' as well as the federal courts' adjudicating such questions, *see, e. g., Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (issues of scope and validity arising in action for patent royalties remanded to state courts); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 874–79 (2d ed. 1973), the alternative to an anticipatory federal adjudication in this case is to leave the issues of patent scope and validity to confront the arbitration panel. Such issues involve complex and difficult questions in applying an extremely technical body of law. They are questions that may be unfamiliar to arbitrators, particularly if members of the panel are not lawyers or are citizens of a foreign country. In addition, the expertise of arbitrators has always lain in resolving, perhaps by way of compromise, contractual disputes rather than in interpreting the import of complicated federal legislation. *Cf. Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52–54, 56–57, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Meltzer, *Ruminations About Ideology, Law, and Labor Arbitration,* 34 U.Chi.L.Rev. 545, 557–60 (1967). And if, partly for these reasons, an arbitration panel were to determine that the issues of patent law were not arbitrable, *cf. Beckman Instruments, Inc. v. Technical Development Corp.,* 433 F.2d 55, 63 (7th Cir. 1970), *cert. denied,* 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971); *Leesona Corp. v. Cotwool Mfg. Corp.,* 204 F.Supp. 141, 143

---

5. *See* 10 C. Wright & A. Miller, *supra,* § 2758, at 775–76, § 2759, at 787–88 & n. 25, and cases cited; 6A J. Moore, *supra,* ¶ 5708[5]. An instructive case in this regard is *Cunningham Bros. Inc., v. Bail,* 407 F.2d 1165 (7th Cir.), *cert. denied,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969), a declaratory judgment action in which the plaintiff faced a number of tort suits, some pending and some threatened, growing out of the collapse of a construction platform. Plaintiff sought a declaration that it as the general contractor of the construction project did not "have charge" of the platform as required by the relevant state negligence statute. Declaratory relief was denied, and the denial affirmed on appeal, on the ground that "to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tortfeasor would be a perversion of the Declaratory Judgment Act," which was not intended "to enable a prospective negligence action defendant to obtain a declaration of non-liability." The court continued: "Although our holding may require the plaintiff here to litigate a number of lawsuits with the injured parties, we feel that this result does not outweigh the right of a personal injury plaintiff to choose the forum and the time, if at all, to assert his claim." *Id.* at 1167–69. *See* *also United States v. Cincinnati Transit, Inc.,* 337 F.Supp. 1068, 1073 (S.D. Ohio 1972) (company threatened with government suit for violation of Economic Stabilization Act denied declaration that it had not violated the Act).

6. In this connection we find no merit in the argument that jurisdiction is lacking because appellants have assigned their patent to Hanes and do not retain a sufficient interest in it to give rise to a "case or controversy" over its scope and validity. A variant of the same argument is made elsewhere under the heading of "jurisdiction over the person," it being alleged that such jurisdiction must derive from 35 U.S.C. § 293 (1970), which applies only to nonresident "patentees," and not to patent assignors. The answer to both contentions is that one who assigns a patent but retains the right to royalties and the performance of other services, in default of which the patent immediately reverts, is indistinguishable from one who grants an exclusive and revocable patent license. Appellants' practical adverse interest in the patent questions is undeniable, and it plainly brings them within the jurisdictional reach of both Article III of the Constitution and 35 U.S.C. § 293 (1970).

(W.D.S.C.1962), aff'd, 315 F.2d 538 (4th Cir. 1963); Zip Mfg. Co. v. Pep Mfg. Co., 44 F.2d 184, 186 (D.Del.1930), it is possible that the next tribunal to face these issues—most likely one called upon to review or enforce an arbitration award—would be a court in a foreign country, again not a desirable forum for determining the scope and validity of United States Patent No. 2,609,677. We conclude, therefore, that the district judge would not have acted improperly had he entertained and proceeded to resolution [7] of the declaratory relief that was originally sought.[8]

7. As we note below, see pp. —————— of 174 U.S.App.D.C., p. 600 of 531 F.2d infra, the district judge may find it advisable to defer ruling upon the legal issues presented by Count I of the complaint until the completion of arbitration proceedings, which may render unnecessary any consideration of those issues.

8. Although neither the parties nor the District Court appear to have considered the possible existence of diversity jurisdiction, the suit is one between "citizens of a State, and foreign states or citizens thereof," and it appears that the only reason why federal jurisdiction under 28 U.S.C. § 1332 (1970) might not exist would be if there were not $10,000 in controversy. But in our view, even without $10,000 in controversy, there would still be federal jurisdiction over Count I of the complaint, for under id. § 1338(a), the federal courts have exclusive subject matter jurisdiction over controversies arising under the patent laws without regard to amount in controversy.

At least one court has questioned the existence of "arising under" jurisdiction in a case like this one. In Thiokol Chem. Corp. v. Burlington Indus., Inc., 448 F.2d 1328 (3d Cir. 1971), cert. denied, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972), the court held that there is no federal jurisdiction to grant a declaratory judgment of patent invalidity, scope, and non-infringement at the behest of a licensee who faces an impending royalty action in state court. The court relied on the dictum of Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952), that

[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.

The Thiokol holding strikes us as of questionable force. Other federal courts have consistently entertained jurisdiction over suits seeking declarations of patent invalidity or non-infringement, see e. g., Cold Metal Prods. Co. v. E. W. Bliss Co., 285 F.2d 244 (6th Cir. 1960); Hook v. Hook & Ackerman, Inc., 187 F.2d 52 (3d Cir. 1951); Medtronic, Inc. v. American Optical Corp., 327 F.Supp. 1327 (D.Minn.1971); JFD Electronics Corp. v. Channel Master Corp., 229 F.Supp. 514 (S.D.N.Y.1964), and the Supreme Court has done likewise without question as to jurisdiction, see e. g., Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 185–86, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235 (1949). At least where, as in Thiokol, the suit seeks a declaration of non-infringement, that federal issue could also be the basis of a coercive suit, were the licensor or assignor to sue the licensee or assignee for infringement. Thus, even though the declaratory judgment reverses the parties, the federal issue adjudicated in the declaratory judgment action is precisely the basis for a possible coercive federal cause of action. In such circumstances, it is appropriate to recognize the existence of "arising under" jurisdiction. See, e. g., 10 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2767 (1973); Mishkin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157, 177–79 (1953); Developments in the Law—Declaratory Judgments, 62 Harv.L.Rev. 787, 801–02, 852–53 (1949). And the existence of a pending or impending state action would be relevant not to the existence of federal jurisdiction, but only to whether notions of comity suggest that discretion should be exercised to decline jurisdiction.

The question might be thought to be harder in this case because no allegation of infringement has been made; indeed, it is uncertain that Hanes could be sued for infringement (and therefore could seek a declaration of non-infringement) with respect to products which necessarily are either not covered by the patent or which the assignment contract authorizes the sale of in return for royalty payments. Components, Inc. v. Western Elec. Co., 318 F.Supp. 959, 962 (D.Me.1970), and cases cited; Ski Pole Specialists, Inc. v. McDonald, 159 U.S. P.Q. 709, 711 n. 4 (9th Cir. 1969). In any event, no claim of infringement has been made; the declaration sought in Count I relates only to the validity and scope of the patent. The only issues presently in controversy, it might be alleged, merely anticipate a federal defense to a non-federal cause of action—one for royalties on the assignment contract—and where the declaratory judgment action merely anticipates a federal defense to a non-federal coercive action, the existence of arising under jurisdiction is much less certain. See, e. g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); 10 C. Wright & A. Miller, supra, § 2767; Mishkin, supra, at 177–

With respect to Count II, however—the request for a declaration that any contractual claim would be barred by the statute of limitations—the balance of factors is quite different. Here, too, Hanes seeks to have a federal court exercise discretion to assume jurisdiction over a declaratory judgment action respecting an *expired* patent. As we noted above, such a claim fails, as an initial matter, to implicate the reasons for granting this discretionary remedy. And unlike Count I—as to which there is a countervailing policy in favor of federal adjudication—there is present in this case no important policy to counteract the inappropriateness of considering declaratory relief as to an expired patent. In fact, there is at least one important additional reason why it would be improper to exercise discretion over this claim.[9]

84; *Developments in the Law, supra,* at 802–03, 863–64.

Although this argument has a surface plausibility, it fails to consider an important refinement: although an action brought by the Frenchmen against Hanes for royalties would necessarily be based on the contract and hence would be non-federal, to establish the contract claim would require demonstrating that the products at issue fell within the scope of the contractual obligation to pay royalties. Since Article III of the assignment contract merely incorporates the terms of the patent as the basis for such a determination, *see* Addendum to Appellee's Brief, the Frenchmen would be required to demonstrate as part of their case in chief that the patent extended to the products for which royalties were sought. Hence, embedded within a non-federal cause of action is a plainly federal question—the scope of the patent—bringing this coercive action within the "arising under" jurisdiction. *See Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 824–27 (2d Cir. 1964) (Friendly, J.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *cf. De Sylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (jurisdiction accepted *sub silentio* ).

It is less certain that the question of patent validity, if considered independently of any question of infringement or scope of the patent, would have to be raised as a matter of orderly pleading and proof in a coercive action by the Frenchmen for royalties. For a patent having been issued, it is presumed valid, 35 U.S.C. § 282 (1970), and hence the question of validity would be a matter to be raised by defense rather than as part of plaintiff's case in chief. Thus, it might well be argued that where a declaration of invalidity alone is sought, there is no "arising under" jurisdiction.

However that may be, the questions of scope and validity of a single patent are closely intertwined, and were the former to be entertained, the latter would appear plainly to fall within the scope of pendent jurisdiction. They are claims that would normally be expected to be tried together, in part because judicial economy will be served by consolidating two issues the proof of which will overlap. And unlike instances in which a pendent claim is state-created, here it too is a question of federal law: hence, the concern for avoiding unnecessary determinations of state law is not present. *See generally United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Indeed, as has been noted in text, the issue is one as to which there is a strong federal policy in having the federal courts determine. Although it is true that state courts do on occasion determine questions of patent validity, arbitrators as a rule do not, and, as has been noted in text, for good reason. Hence, assertion of pendent jurisdiction would appear to be clearly appropriate.

We thus believe that on remand the district court need not follow *Thiokol,* but instead can find that Count I does fall within the scope of "arising under" jurisdiction. Moreover, the reasons favoring the exercise of discretion to assert pendent jurisdiction over the question of patent invalidity—assuming without deciding that it alone would not fall within the "arising under" jurisdiction—would also argue against extending the holding in *Product Engineering & Mfg., Inc. v. Barnes,* 424 F.2d 42 (10th Cir. 1970)—ruling that a federal suit for a declaration of patent invalidity should as a matter of discretion be stayed pending a previously filed state suit to enforce a patent licensing agreement—to this case. We are uncertain that we would follow *Product Engineering* in any event, but when the alternative forum is an international arbitration proceeding peculiarly unsuited to determination of questions of patent validity, exercising discretion to assume jurisdiction is clearly proper.

9. On the state of this record we cannot determine whether a second reason reinforcing our disinclination to favor the exercise of jurisdiction is necessarily present. That reason relates to whether there is an independent basis of federal subject matter jurisdiction for the claim stated in Count II of the complaint. If there is $10,000 in controversy, there would appear to be diversity jurisdiction under 28 U.S.C. § 1332 with respect to that claim. *See* note 8 *supra.* Otherwise, there would be no independent jurisdiction over Count II, and subject matter jurisdiction would exist only on a pendent basis; it was on this basis that the District Court assumed jurisdiction over Count II. Under the

In our view the parties contemplated that contractual disputes growing out of the assignment contract would be resolved not by the United States District Court in the District of Columbia—or indeed by any court—but rather by an arbitration board pursuant to the rules and regulations of the International Chamber of Commerce.[10] The propriety of declaratory relief must be judged with reference to whether the issue in question is more properly resolved in another forum. *See Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 246, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (declaratory judgment procedure is not to be used "to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal.") *See generally* 10 C. Wright & A. Miller, *supra,* § 2758. Here the parties before us

---

pendent jurisdiction doctrine, jurisdiction in the sense of judicial power exists when the non-federal claim is such that the plaintiff would ordinarily expect it to be tried with the federal claim in one judicial proceeding, a question to be resolved by reference to whether the claims drive from a "common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). But

> [t]hat power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them
> . . . .

*Id.* at 726, 86 S.Ct. at 1139.

Thus, the District Court's decision to accept jurisdiction over Count II may have been doubly discretionary—because it involved both a declaratory judgment action and invocation of pendent jurisdiction. And the factors related to the second discretionary determination point against accepting pendent jurisdiction. It is difficult to see the common nucleus of operative fact—at least as regards possible economy from consolidating two issues with common elements of proof—that links (1) the validity *vel non* and scope of United States patent No. 2,609,677, and (2) whether the applicable statute of limitations bars a claim for royalties based upon an international assignment contract respecting that patent. Even if there is a sufficient nexus to create judicial power, as a matter of discretion the lack of overlapping proof may argue for declining jurisdiction. Nor does it appear to promote fairness and convenience to require the Frenchmen to litigate this claim before a judicial tribunal in a foreign country. This latter point ties in closely, moreover, with the principal reason that reinforces our unwillingness to extend federal jurisdiction to this count, explained below in text.

The District Court's treatment of the two counts seems somewhat unusual. The only justification it considered for reaching Count II—the statute of limitations issue—was apparently that it could be entertained as pendent to Count I, as to which jurisdiction was thought clearly to exist. Having relied upon the need to adjudicate Count I as the justification for assuming jurisdiction over Count II, the court failed to determine the former. Indeed, Count II was added in response to the District Court's having itself raised the statute of limitations question, and the court proceeded to dispose of that question so as to render consideration of the only genuine federal issues in the case—those relating to patent validity and scope—either unnecessary or premature. *See,* p. —— of 174 U.S.App.D.C., pp. 589–590 of 531 F.2d *supra.* Such a course permits the tail to wag the dog, and does not square with the rationale of pendent jurisdiction. *Cf. United Mine Workers v. Gibbs, supra,* at 727, 86 S.Ct. at 1140 ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.").

10. Hanes protests that arbitration has not actually been sought, but only "conciliation." It is true that conciliation and arbitration are separate proceedings, the one not necessarily following the other, and it is also apparently true that appellants have made a formal request only for the former. The record makes clear, however, that conciliation is in practice merely a prelude to arbitration. Article 5 of the International Chamber of Commerce's rules provide that "[s]hould a settlement not result [from conciliation], the parties shall be at liberty to refer their dispute to arbitration." J.A. exh. L. Some time after appellants' request for conciliation had been filed with the Chamber, the Secretary General of its arbitration court wrote to their attorney to inform him that there had been no response to the request and to ask the attorney to confirm that the request "should be considered as an application for intervention in arbitration." J.A. exh. J. Appellants' position throughout this case has been that they are seeking arbitration, and that proceedings in the District Court should be stayed for that reason. We will not penalize them for seeking an amicable settlement of their claims before pressing for arbitration.

negotiated a broad arbitration agreement. *See,* p. —— of 174 U.S.App.D.C., pp. 588–589 of 531 F.2d *supra.* The federal courts have recognized a strong federal policy in favor of voluntary commercial arbitration, as embodied in the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* (1970). *See, e. g., Aerojet-General Corp. v. American Arbitration Ass'n,* 478 F.2d 248, 251 (9th Cir. 1973); *J S & H Const. Co. v. Richmond County Hosp. Auth.,* 473 F.2d 212, 214–15 (5th Cir. 1973); *Kulukundis Shipping Co., S. A. v. Amtorg Trading Corp.,* 126 F.2d 978, 985 (2d Cir. 1942). That Act, "reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts . . . .'" *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974), *quoting* H.R.Rep. No. 96, 68th Cong., 1st Sess., at 1, 2 (1924). In addition to speed and economy, the advantages that may commend arbitration to parties are manifold: informality, the possibility of coordination with other modes of conciliation, and the ability to preselect the location of, a set of procedural rules or substantive law governing, or even the language to be used in, dispute resolution. *See generally* M. Domke, Commercial Arbitration §§ 1.01–.03, 16.01–.03, 25.01–.06 (1968). Even where, as here, such preselection has not explicitly been made, the parties may wish to leave to the arbitrators, rather than to a court of a particular jurisdiction, the authority to make such choices. *See id.* §§ 16.02–.03, 25.01.

It is apparent that several of these advantages may be especially important when the dispute committed to arbitration is international in character. The uncertainties arising from possible adjudication in forums that may be far away, conducted in a foreign language, with unknown or alien procedures and substantive rules, plainly are more substantial in such a situation. Within only the last two years, the Supreme Court recognized the particular importance of agreements to arbitrate in international commercial transactions. In *Scherk v. Al-*

*berto-Culver Co., supra,* the Court indicated that the international character of an arbitration agreement constituted a special reason for judicial deference to the arbitral process, 417 U.S. at 515–16, 94 S.Ct. 2449, emphasizing that reliance upon that process aided in limiting the uncertainties inherently attendant upon international trade and commerce, *id.* at 516–19, 94 S.Ct. 2449. These considerations indicate to us that the District Court's assumption of declaratory judgment jurisdiction over Count II so as to displace international arbitration proceedings was improper.

The relevance of federal arbitration policy to the exercise of discretionary federal jurisdiction is well-illustrated by *Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176 (2d Cir. 1974), involving discretion to assume pendent jurisdiction. Several state contract claims committed by the contract to arbitration had been appended to claims based upon the federal securities law. Judge Friendly observed that his circuit had "not been grudging with its application of . . . pendent jurisdiction principles," but that ordinarily the exercise of such jurisdiction did not involve "any risk of loss of rights beyond the possibility . . . that the federal court would misread state law." But in his view, "[a] quite different case is presented where, as here, dismissal or a stay of the state claims would enable the defendant to have those claims determined by arbitrators rather than by a court." *Id.* at 1179. Judge Friendly concluded that in such cases

> the federal court normally should stay the trial of the state claims or dismiss them in the absence of any other ground of federal jurisdiction, if properly requested to do so, even when the federal claims cannot be disposed of without a trial. While exceptional circumstances might justify a contrary course, at the moment we cannot think of any.

*Id.* at 1180. *See also Necchi v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693, 696 (2d Cir. 1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966); *Aeronaves*

de Mexico, S. A. v. Triangle Aviation Serv., Inc., 389 F.Supp. 1388, 1391 (S.D.N.Y.1974), aff'd, 515 F.2d 504 (2d Cir. 1975). The correctness of that course of action can only be thought to be clearer in this case due to the presence of an *international* commercial transaction.[11]

### III

The argument in favor of deference to the arbitral process fails, of course, if there is no issue which falls within the scope of the arbitrator's authority. Hence, in considering Count II of the complaint, we must inquire both (1) whether the parties' agreement contemplated commitment to arbitration of questions relating to the statute of limitations, and (2) if so, whether such an intent is appropriately given legal force.

■ As to the first inquiry, we begin with the accepted premise that, in construing arbitration agreements, every doubt is to be resolved in favor of arbitration. *E. g., Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Galt v. Libbey-Ownes-Ford Glass Co.,* 376 F.2d 711, 714 (7th Cir. 1967); *Metro Industrial Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 385 (2d Cir.), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cr. 1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). That canon of construction implements several important policies: it eases court congestion; it provides broad latitude to permit effectuation of the intent of the parties; and it limits the delay in dispute resolution that would occur were a wide range of issues to require judicial consideration prior to commencement of arbitration—delay that would undermine a principal objective of arbitration itself.

■ The parties in *Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd.,* 204 F.2d 366, 367, 369 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953), were held to have committed to arbitration the issue of the timeliness of claims by agreeing to the following arbitration clause:

> Failing amicable settlement, all claims, disputes or controversies arising under or in relation to this contract shall be determined by arbitration.

In substance and breadth, that clause differs little from the one at bar, and we find no reason to deviate from the ruling in *Reconstruction Finance.*

■ Although the second issue may be somewhat less free from doubt, we believe that there is no persuasive reason for not giving legal force to the parties' intent to encompass the statute of limitations issue within the arbitration clause. Again, we start from an accepted premise—that after determining the existence of a valid and enforceable agreement that extends to the dispute at hand, courts should not play a broad role in denying effect to agreements to arbitrate. *E. g., National R. R. Passenger Corp. v. Missouri Pacific R. R. Co.,* 501 F.2d 423, 427 (8th Cir. 1974), and cases cited; *Hamilton Life Ins. Co. v. Republic Nat. Life Ins. Co.,* 408 F.2d 606, 609 (2d Cir. 1969); M. Domke, *supra,* § 17.02, at 158. This premise, too, is a product of the strong federal policy favoring arbitration.

Although Hanes has not addressed the enforceability of the agreement as it applies to the arbitrability of statute of limitations questions, it might have argued that such questions are aspects of the dispute that derive from the statutory law of remedies rather than the substantive rights created by contract. As such, they could be said to present legal questions extrinsic to the contractual agreement and as to which arbitrators have no special (and perhaps less) competence and experience as compared to courts.

---

11. Hanes attempts to distinguish *Kavit* by noting that the pendent claim in that case was a complete contractual cause of action, whereas Count II in this case raised only the statute of limitations issue. We have difficulty seeing why that distinction makes this case more attractive for the exercise of jurisdiction, and in any event it seems less important than the distinction between domestic and international transactions.

These arguments are not without force. Yet in our view, they are ultimately unpersuasive for a number of reasons. First, they clash with the fundamental and powerful federal policy that favors arbitration of disputes and narrowly constricts the scope of judicial intervention. Second, as was noted above, the Supreme Court in the *Scherk* case emphasized the special importance of that policy when the transactions involved are international in character. The Frenchmen are not likely to be familiar with the statutes of limitations and choice of law rules of a particular American jurisdiction where suit is brought. Although arbitration has been criticized for its unpredictability, in the international setting it may promote certainty by moderating the disparities among unfamiliar and contrasting choice of law rules and statutes of limitations that would govern questions of timeliness in a judicial proceeding. And as we noted above, the agreement to arbitrate may represent, if not a designation by the parties of a particular statute of limitations to govern all claims, at least a commission of the authority to select and apply the statute to an arbitrator expected to be sensitive and sympathetic to the peculiar needs of international commerce.

Third, *Reconstruction Finance, supra,* the leading case on the question, held that there was no bar to having the arbitrator determine the question of timeliness. The claimant in that case had asserted that the other party had defaulted on its obligation to insure goods that were later lost at sea. After the claimant had requested arbitration, the party potentially liable sued in federal court for an order staying arbitration on the ground that any contract claims were barred by the New York statute of limitations. In affirming the District Court's denial of that order, the Second Circuit ruled that "[t]he effect of the limitations statute on the asserted obligations to obtain insurance will be determined by the arbitrator." 204 F.2d at 369. That result received the approval of commentators. *See* 67 Harv.L.Rev. 510, 511 (1964); 38 Minn.L.Rev. 264, 265 (1954). *See also Office of Supply, Government of the Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 380 (2d Cir. 1972) (effect of statutory time bar also incorporated by reference in the contract is appropriately determined by arbitrator).

Finally, the very kinds of arguments that Hanes might have raised to support the contention that the effect of statutes of limitations should be decided by courts have been rejected by the Supreme Court in an analogous setting. In *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), the Supreme Court ruled that where the arbitration clause of a collective bargaining agreement is broad enough to encompass the question of laches, that issue is for the arbitrator rather than the court. In doing so, the Court was not persuaded by the arguments like those alluded to above, and marshalled by Mr. Justice Powell in dissent, to support the conclusion that arbitration should not displace the traditional equity jurisdiction of courts to decide such issues as laches. Although one must be cautious in drawing parallels from labor arbitration to commercial arbitration, we can think of no reason why different considerations should govern with respect to this issue. Indeed, the modern trend in the commercial context is also to find the question of laches to be arbitrable. *See, e. g., Trafalgar Shipping Co. v. International Milling Co.,* 401 F.2d 568, 571–72 (2d Cir. 1968); *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.,* 61 F.R.D. 8, 10 (D.V.I.1973); *Maritime Co. "Spetsai," S. A. v. International Commodities Export Corp.,* 348 F.Supp. 258, 259–60 (S.D.N.Y.1972); *cf. Halcon Int'l, Inc. v. Monsanto Australia Ltd.,* 446 F.2d 156, 159–62 (7th Cir.) (laches is arbitrable at least where it is "intrinsic" to a commercial contract), *cert. denied,* 404 U.S. 949, 92 S.Ct. 286, 30 L.Ed.2d 266 (1971). And although it might be argued that laches is more flexible and factually oriented than are statute of limitations questions, that distinction also seems without force. The difference in the degree of factual orientation is easily overstated, for in this case the arbitrator may

be forced to decide at what point any breach might have occurred and when the Frenchmen did or should have acquired knowledge of the alleged breach. Such an inquiry will require considerable factual probing. Moreover, the doctrine of laches has historically been considered by courts, and is a doctrine of equity rather than contract; in this respect, it does not differ from the legal, non-contractual law respecting statutes of limitations. Thus, we find no reason to depart from the approach of *Flair Builders.*[12]

■ We conclude, then, that the strong policy in favor of arbitration, especially in international commerce, and the precedents both directly on point and relevant by analogy, suggest the appropriateness of giving legal force to the parties' arbitration agreement as it encompasses the statute of limitations question. That being so, assumption of declaratory judgment jurisdiction over Count II of the complaint was inappropriate.

As we noted above, we believe that the District Court may appropriately assume jurisdiction over the issues raised in Count I of Hanes' complaint.[13] However, it is possible that submission of the royalty claim to arbitration will result in a determination that appellants are not entitled to any

award regardless of the scope or validity of the patent. In light of that possibility, the District Court may wish to reconsider appellants' motion for a stay of proceedings pending arbitration.

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

---

12. Nor can it be contended that the statute of limitations bars enforcement of the arbitration agreement itself. The point was expressly taken up in the *Reconstruction Finance* case, and it was held that, even assuming that there is a statute applicable to the arbitration agreement, that statute could not begin to run until the agreement was broken, that is to say, until arbitration was sought by one party and refused by the other. 204 F.2d at 369. It is at that moment that a cause of action under the arbitration agreement first accrues, and hence it is from that moment that the time limitation on enforcement of the agreement must be measured. In fact the appropriate time bar to a suit to specifically enforce arbitration may be laches. Presumably that more flexible doctrine could defeat a too-dilatory attempt to enforce arbitration whether the objecting party had previously objected or not. Yet, as we have noted, the trend in the cases has been to submit the question of laches to the arbitrators themselves. In any event, there is no basis for a judicial ruling that enforcement of the agreement to arbitrate is time-barred.

13. We have already indicated that the District Court had subject matter jurisdiction over Count I of the complaint, *see* notes 6, 8 *supra,* and that appellants are personally amenable to the District Court's jurisdiction under 35 U.S.C. § 293 (1970), see note 6 *supra.* The only remaining objection of appellants that we need to consider is that based upon defective service of process. We would be reluctant to rely, as the District Court did, *see* J.A. exh. AA, on appellants' having waived this objection when their attorney moved for dismissal of the suit, there being some question whether appellants themselves knew at that time that he *was* their attorney. But we think the problem is overcome by the fact that by November 12, 1973, all of the appellants had in fact been personally served by the French "Huissier de Justice." Whether or not this cured the defect in the District Court's jurisdiction to grant the declaratory judgment now appealed from we need not decide, for it surely prevents any objection to the entry of a further judgment on remand.