MERIT SYSTEMS PROTECTION BOARD, Plaintiff,

v.

Mary EASTWOOD, Defendant.

Civ. A. No. 80–2970.

United States District Court, District of Columbia.

June 30, 1981.

Evangeline W. Swift, Gen. Counsel of the MSPB, Jane M. Edmisten, Deputy Gen. Counsel of the MSPB, Washington, D. C., for plaintiff.

Abe Fortas, Fortas & Koven, Lynn R. Collins, Acting Deputy Sp. Counsel of the MSPB, Vincent A. Fuller, Jr., Senior Trial Atty., Washington, D. C., for defendant.

James R. Rosa, Gen. Counsel of AFGE, Washington, D. C., Mary E. Jacksteit, Staff Counsel of AFGE, Washington, D. C., for intervenor-defendant American Federation of Government Employees.

## ORDER

CHARLES R. RICHEY, District Judge.

Plaintiff Merit Systems Protection Board ("Board") has filed suit in this Court against defendant Mary Eastwood, individually and in her official capacity as Acting Special Counsel of the Board. The gravamen of the complaint is that defendant Eastwood has obligated government funds illegally and otherwise acted in derogation of her statutory duties so as to bring the Board and its Chairwoman, Ruth T. Prokop, close to spending government funds without authorization from Congress in violation of the Anti-Deficiency Act, 31 U.S.C. § 665. To remedy this injury, plaintiff seeks a declaratory judgment that the Board has general administrative and exclusive budgetary authority over the Special Counsel as well as preliminary and permanent injunctions commanding Acting Special Counsel Eastwood to abide by the Board's administrative and budgetary directives.

Now before the Court is defendant Eastwood's motion to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In essence, defendant argues that the matter presented is non-justiciable because there is no "case or controversy" and because the issue is by nature a political question best resolved by another branch of the federal government. The Court agrees that this action should be dismissed for the former reason.

### Background

The Merit Systems Protection Board and its Special Counsel were established in 1978 by Reorganization Plan No. 2, 3 C.F.R. § 323 (1978 Compilation), *reprinted in* 5 U.S.C. app. at 57 (Supp.1980), which abolished the former Civil Service Commission. The Reorganization Plan and the subsequently enacted Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, conferred upon the Board the adjudicatory function previously performed by the Civil Service Commission in connection with employee appeals from adverse agency actions and certain new adjudicatory tasks. 5 U.S.C. § 1205. The Board is composed of three Presidentially-appointed members one of whom is selected by the President to serve as "chief executive and administrative officer of the Board." 5 U.S.C. §§ 1201, 1203(a). In order to guarantee the autonomy of the Board from the Executive branch, the Reform Act authorized the Board to submit its annual budget and any legislative recommendations simultaneously to Congress and the President. 5 U.S.C. §§ 1205(j), (k).

The Office of the Special Counsel, on the other hand, was empowered to receive and investigate allegations of prohibited personnel practices and then to seek stays or corrective actions or to prosecute employee disciplinary actions in proceedings before the Board. 5 U.S.C. §§ 1206-08. The independence of this Office was ensured by granting it the authority to appoint the personnel necessary to perform its functions, the power to prescribe regulations relating to the receipt and investigation of matters under the jurisdiction of the Office, and the obligation to report annually to Congress on its activities and any legislative proposals it might have. 5 U.S.C. § 1206(j), (m). Although the Act does not address the question of the Special Counsel's budgetary authority, the Board has customarily listed the Special Counsel's budget requests as a separate line item appropriation within its budget submission.

The events leading to the initiation of this lawsuit commenced on January 11, 1980, when President Jimmy Carter designated defendant Mary Eastwood as Acting Special Counsel pending the appointment of a permanent Special Counsel. Despite the Congressional authorization to have 140 employees for Fiscal Year ("FY") 1980, the Office of the Special Counsel included far fewer individuals at the time Ms. Eastwood assumed control. By February 29, 1980, the effective date of President Carter's government-wide hiring freeze, there were only 61 employees in the Office. While the Board chose to comply with the President's order and to apply for an exemption, the Acting Special Counsel insisted that her Office was

not subject to the freeze because of her authority to appoint personnel under 5 U.S.C. § 1206(j). Defendant Eastwood notified the Office of Management and Budget of her position and proceeded to hire additional employees.

On July 8, 1980, the Supplemental Appropriations and Rescission Act, Pub.L.No.96–304, 94 Stat. 857 (1980), suddenly withdrew $2 million from the Special Counsel's $4.516 million appropriation for FY 1980. The report of the Senate Appropriations Committee which accompanied the bill expressly directed the Acting Special Counsel to "fully respect and abide" by the President's hiring freeze. When defendant Eastwood received this report on July 14, 1980, she immediately ceased all new hiring, and the only employee to enter on duty subsequently had been given a firm commitment by the Office before that date.

Meanwhile, Chairwoman Prokop ordered the Board's budget officer to determine the status of the Special Counsel's budget. Upon receiving a report that a significant over-obligation of funds by the Acting Special Counsel was imminent, the Chairwoman directed defendant Eastwood to cease any further expenditure of funds and advised her that the Chairwoman was responsible for any violation of the Anti-Deficiency Act caused by Eastwood's spending. Ms. Prokop formally communicated the possible deficiency to Congress on August 21, 1980.

On the same day, the Chairwoman wrote to defendant Eastwood in an effort to clarify the relationship between the Board and the Special Counsel. Specifically, Ms. Prokop informed the Acting Special Counsel that the Board would (1) be responsible for processing all hiring and other personnel actions in the Office of the Special Counsel except for selection of employees for that Office; (2) supervise the preparation and presentation of Special Counsel budget proposals; (3) regularly prepare and review Special Counsel accounts; (4) supervise contractual and other financial obligations incurred by the Special Counsel; (5) combine and supervise the public information, Congressional liaison, and interagency liaison activities of the Special Counsel and other Board offices; and (6) provide administrative supervision and services for the Special Counsel's headquarters and field offices. The Acting Special Counsel responded that she refused to comply with the Chairwoman's directives. When Ms. Prokop wrote a second letter demanding immediate implementation of the guidelines set forth in the August 21, 1980, letter, defendant Eastwood again objected and asserted that the Office of the Special Counsel was "independent of any supervision or control of, or direction by, the Board."

Despite the fears of the Chairwoman, there was no violation of the Anti-Deficiency Act. Ms. Prokop, however, remained concerned about her potential liability under that Act when the President signed a continuing resolution on October 1, 1980, which maintained the level of appropriations at the same reduced level as the preceding resolution. Supplemental Appropriations and Rescission Act, Pub.L.No.96–369, 94 Stat. 1351 (1980). The Board consequently filed this suit on November 21, 1980.

When the October 1, 1980, continuing resolution expired on December 15, 1980, it was succeeded by another resolution providing funding for the Office of the Special Counsel at the level of $4.2 million for FY 1981. Act of December 16, 1980, Pub.L.No. 96–536, 94 Stat. 3166. The danger of an Anti-Deficiency Act violation was thereby obviated, and, as of the date of this Order, neither the Board nor the Special Counsel has been found in violation of the Act. Furthermore, on June 2, 1981, the Senate confirmed the nomination of Alex Kozinski as Special Counsel of the Board; thus, Ms. Eastwood no longer exercises the authority of the Acting Special Counsel.

*Legal Conclusions*

■ It is well established that certain questions are inappropriate for judicial action. The reluctance of the courts to engage themselves in the resolution of such issues stems in part from the restriction on judicial power to "cases" and "controver-

sies" in Article III of the U. S. Constitution and in part from policy considerations. *See* C. Wright, A. Miller, and E. Cooper, 13 Federal Practice and Procedure § 3529 (1975). This limitation applies to suits seeking damages, injunctions and declaratory judgments alike. Although there is no concrete definition of a "case" or "controversy" that is justiciable in the federal courts, the most famous effort was made by Chief Justice Hughes in *Aetna Life Insurance Co. v. Haworth* :

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must have a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 *rehearing denied*, 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937) (citations omitted).

 With respect to actions requesting declaratory relief, the Declaratory Judgment Act specifically requires "a case of actual controversy." 28 U.S.C. § 2201. Justice Murphy explained that:

> the difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Naturally, an action for a declaratory judgment can be brought too late if there is no longer an actual controversy, and events subsequent to the filing of the action may render it moot by the time of decision. *See Golden v. Zwickler*, 394 U.S. 103, 108–10, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113 (1969); *Merced Rosa v. Herrero*, 423 F.2d 591, 593 (1st Cir. 1970); *Mailer v. Zolotow*, 380 F.Supp. 894, 896–97 (S.D.N.Y.1974); C. Wright and A. Miller, 10 Federal Practice and Procedure § 2757 (1973). Similarly, a dispute may be nonjusticiable by virtue of the unlikely occurrence of future contingencies which will determine whether a controversy ever actually becomes real. *See* C. Wright and A. Miller, 10 Federal Practice and Procedure § 2757 (1973). Even if the situation does present an actual controversy, the Court has discretion whether to entertain an action for a declaratory judgment. *See Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 *rehearing denied*, 317 U.S. 704, 63 S.Ct. 23, 187 L.Ed. 562 (1942); *Hanes Corp. v. Millard*, 531 F.2d 585, 591 (D.C.Cir.1976). The Supreme Court, for example, has indicated a marked reluctance to have important questions of public law resolved by declaratory judgments. *See Golden v. Zwickler*, 394 U.S. at 109, 89 S.Ct. at 960; *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954); *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

 In view of the foregoing, the Court finds that the instant case is non-justiciable because it fails to present a live "case or controversy." The request for injunctive relief directed at defendant Eastwood was rendered moot by the appointment of a permanent Special Counsel. Because the new Special Counsel will in all probability cooperate with the Board, there appears to be no actual controversy upon which the Court can make a declaratory judgment. The Board was not even placed in violation of the Anti-Deficiency Act by the actions of the former Acting Special Counsel, so the Court has no reason to believe that Mr. Kozinski will conduct the affairs of the

Office of the Special Counsel in such a way as to violate that Act. It is understandable that a certain amount of confusion originally accompanied the imposition of the President's hiring freeze and that the Anti-Deficiency Act was nearly violated as a result, but the danger has clearly passed.

In essence, the Court is confronted with a request that it interpret a statute, the Civil Service Reform Act of 1978, in the abstract without the benefit of a definite and concrete controversy. The only authority plaintiff cites which favors judicial resolution of such a question is a Note in the Yale Law Journal entitled *Judicial Resolution of Inter-Agency Legal Disputes*, 89 Yale L.J. 1595 (1980). Although his novel argument is superficially appealing, the author fails to recognize that situations like the present one burden the courts because the issue has not been narrowed and refined by an actual, tangible controversy. This Court is reluctant to issue an advisory opinion on such an important question of public law as the appropriate relationship between the recently created Board and the Office of the Special Counsel without further clarification of the question presented for decision.

In part, the Court reaches this conclusion because of the availability of other remedies. As noted by intervenor-defendant American Federation of Government Employees, other courts do and will have the opportunity to resolve specific conflicts over the same statutory provisions implicated in this case when raised in suits brought by federal employees. In addition, both the Board and the Special Counsel are authorized to recommend legislative solutions to Congress, *see* 5 U.S.C. §§ 1205(k), 1206(m), and, in fact, several attempts have been made to remedy the instant problem by amendment to the Civil Service Reform Act. Finally, the Court notes that the Executive Branch has offered its conciliatory services to the parties.

Upon consideration of the entire record herein, it is, by the Court, this 30th day of June, 1981,

ORDERED that defendant's motion to dismiss be, and the same hereby is, granted: and it is

FURTHER ORDERED that the complaint in the above-captioned action be, and the same hereby is, dismissed.