Jacquelyn M. CHAGNON, Roger E. Rumpf, Beverly J. Chagnon and John F. Kelly, Plaintiffs,

v.

Griffin BELL, Clarence M. Kelley, Richard Held and William Fleshman, Jr., Defendants.

Civ. A. No. 78–646.

United States District Court, District of Columbia.

Jan. 29, 1979.

Mark H. Lynch, John H. F. Shattuck, ACLU, Washington, D. C., for plaintiffs.

John J. Farley, III, Tort Branch, Civ. Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action by four plaintiffs against Attorney General Griffin B. Bell and three

employees of the FBI seeks monetary damages and declaratory relief for allegedly illegal surveillance. They allege that their conversations with one Truong Dinh Hung were overheard during an allegedly unlawful electronic surveillance. Defendants have filed a motion to dismiss or in the alternative for summary judgment. Their motion alleges that (1) the complaint fails to state a legally cognizable statutory cause of action; (2) the complaint fails to state a legally cognizable constitutional cause of action; (3) there is no subject matter jurisdiction because the $10,000 jurisdictional amount requirement has not been satisfied; and (4) the defendants are immune under the doctrines of absolute and qualified immunity; and (5) the civil damage remedy which plaintiff seeks may not be given retroactive application. Plaintiffs have filed a cross-motion for summary judgment alleging that the court can issue a declaratory judgment that the surveillance of Hung was in violation of the Fourth Amendment. Because plaintiff and defendants have submitted and we have considered affidavits and exhibits outside the pleadings in this action, we treat defendants' motion to dismiss as a motion for summary judgment. Federal Rule of Civil Procedure 12(b). For reasons discussed below, we grant defendants' motion for summary judgment and deny plaintiffs' motion for partial summary judgment.

## I. Statement of Facts

We find that there are no genuine issues of material fact which would preclude the entry of summary judgment in this action. On May 5, 1977, Attorney General Bell was advised by telephone calls from Clarence Kelley, Director of the FBI, and by Warren Christopher, Deputy Secretary of State, that there had been a compromise of security involving classified Department of State documents. On May 6, 1977, the Attorney General was advised that an individual working clandestinely for the FBI and the CIA had served as a courier between Truong Dinh Hung, who was known not to be a United States citizen, and representatives of the Socialist Republic of Vietnam in Paris, France. The Attorney General was further advised that one of the packages which had been carried by this individual contained classified State Department documents. On May 9, 1977, the Attorney General authorized a wiretap on the telephone of Truong Dinh Hung in the District of Columbia. The Attorney General has stated that he authorized the wiretap to determine the extent of material already compromised, the source of the material, the identity and scope of Truong Dinh Hung's network and the extent of the network's activities. Affidavit of Attorney General Griffin B. Bell, ¶ 6, attached to defendants' motion to dismiss or in the alternative for summary judgment (AG affidavit); Transcript of Testimony of Griffin B. Bell, *United States v. Hung,* No. 78–25–A, E.D.Va., March 20, 1978, pp. 8–9, attached to defendants' motion to dismiss or in the alternative for summary judgment. (AG testimony).

The surveillance upon the telephone of Truong Dinh Hung commenced on May 11, 1977. In August and November of 1977, the Attorney General approved renewals of the electronic surveillance. The surveillance was continued until January 31, 1978, when the indictments of Ronald Louis Humphrey and Truong Dinh Hung were returned by the Grand Jury in the United States District Court for the Eastern District of Virginia. It is undisputed that defendants did not acquire a court order to authorize this surveillance at any time during the period of surveillance.

■ Each of the plaintiffs alleges that he or she has been overheard in telephone conversations with Truong Dinh Hung during the period of time when there was a wiretap on his telephone. Plaintiffs also allege on information and belief that defendants have initiated warrantless wiretaps on each of their home telephones. FBI Supervisory Special Agent William J. Slicks, states, however, that the FBI has not initiated such wiretaps. Declaration of William J. Slicks, ¶ 6, attached to defendants' motion

930

to dismiss or in the alternative for summary judgment.[1]

At the trial of Humphrey and Hung, the criminal defendants moved to suppress, *inter alia,* evidence which was obtained through the electronic surveillance. In an opinion dated March 30, 1978, Judge Albert V. Bryan found that the surveillance was a foreign intelligence investigation and that the Fourth Amendment to the Constitution does not require a warrant for such an investigation when it is authorized by the President or the Attorney General acting under the authority of the President. *United States v. Hung, supra.* The Court also held that the surveillance was reasonable until July 20, 1977, but was not reasonable thereafter because the surveillance was not thereafter conducted for the primary purpose of acquiring national security intelligence. *Id.* On May 19, 1978, defendants Hung and Humphrey were convicted on 6 of the 7 counts contained in the indictment.

### II. Jurisdiction

We first treat defendants' threshold argument that this Court lacks subject matter jurisdiction over this action because the amount in controversy to a legal certainty does not exceed $10,000. Defendants first assert that the recent Supreme Court decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), establishes that the infringement of a constitutional right will only support the award of nominal damages. Defendants next contend that a complaint should not survive a motion to dismiss unless it states a compensable claim for relief. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The argument that the Court lacks jurisdiction is without merit.

Plaintiffs satisfy the amount in controversy requirement for damages sought under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 and 47 U.S.C. § 605, (Title III). Title III provides for the recovery of liquidated damages at the rate of $100 per day for each day during which plaintiffs were the subject of an illegal wiretap. 18 U.S.C. § 2520. Since the wiretap at issue in this action continued for 268 days, it cannot be said to be a legal certainty that the complaint does not satisfy the amount in controversy requirement. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 299, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Plaintiffs also satisfy the amount in controversy requirement for its constitutional claims. The Supreme Court decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) was limited to the narrow holding that compensatory damages will not be awarded for violation of Fifth Amendment rights when there was no showing of actual harm. The Court in *Piphus* expressly left open the question of whether violations of constitutional rights other than those protected by the Fifth Amendment would support the award of compensatory damages absent a showing of actual harm. *Id.* at 266, 98 S.Ct. 1042. In light of the express limitation of the scope of the holding, the *Piphus* decision should not be read as an implicit overruling of the holding in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held that individuals may be compensated when their Fourth Amendment rights are violated by official misconduct. Plaintiffs' claims for relief from an allegedly illegal search and seizure in violation of the Fourth Amendment therefore do

1. Contrary to the assertion of plaintiffs, we find that this declaration satisfies the requirements of Federal Rule of Civil Procedure 56(e) and must be accepted in this motion for summary judgment because it is not refuted by an opposing affidavit. The personal knowledge requirement of this Rule does not require that an affiant personally search an agency's records but is instead satisfied if the affiant directs such a search as was done by the affiant here. Since the declaration states that the Washington Field Office would have been responsible for any electronic surveillance of plaintiffs, and absent any reason to believe that the search directed by the declarant was not adequate to identify all FBI records of electronic surveillance of plaintiffs' telephones, we find that the declaration adequately establishes that there is no material issue of whether there was electronic surveillance of plaintiffs' telephones.

state claims which may be compensated by more than nominal damages.[2] Since it cannot be said to a legal certainty that the amount of compensable damage for such an alleged violation to each plaintiff is less than the $10,000 amount in controversy requirement, we hold that this Court also has jurisdiction to consider plaintiffs' constitutional claims. *Accord Dellums v. Powell,* 184 U.S.App.D.C. 275, 305, 566 F.2d 167, 194 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Tatum v. Morton,* 183 U.S.App.D.C. 331, 334, 562 F.2d 1279, 1282 (1977).

As stated at the outset, defendants in support of their motion have asserted other defenses, in addition to the claim of lack of subject matter jurisdiction. While there is ample support for defendants' assertion that electronic surveillance of a foreign agent was proper without a warrant because this aspect of national security is committed to the sole authority and discretion of the President and that therefore the complaint fails to state a cognizable statutory or constitutional cause of action, we prefer to rest our decision on grounds of official immunity.

### III. Official Immunity

#### A. Tests for Absolute and Qualified Immunity

■ The issue of defendants' immunity can be decided independently of the issue of whether plaintiffs state legally cognizable statutory and constitutional causes of action.[3] We first consider whether defendants are entitled to absolute or qualified immunity for any allegedly illegal surveillance of Truong Dinh Hung. Absolute immunity generally relieves a federal official from liability for damages for all discretionary actions, including those which were motivated by malice. *See, e. g., Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). *See generally* Davis, Administrative Law Treatise, § 26.00 (1976 Supp.). By contrast, qualified immunity relieves a federal official from liability for damages for discretionary activities *except* those which were motivated by malice. *See, e. g., Butz v. Economou, supra,* at 508–517, 98 S.Ct. 2894. Absent a good faith allegation by plaintiffs that the Attorney General or those acting under his authority were motivated by malice toward Truong Dinh Hung, we accordingly restrict the scope of our inquiry to the issue of whether defendants to this action are entitled to qualified immunity for damages.[4]

■ The Supreme Court has recently held that "a qualified immunity from damages liability should be the general rule for executive officials charged with constitutional violations." *Butz v. Economou, supra,* at 508, 98 S.Ct. at 2912. The Court also reaffirmed the holding in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), that in the absence of a showing of malice, "an official would not be held liable in damages . . . unless the constitutional right he was alleged to have violated was 'clearly established.'[5] at the time of the violation." *Butz v. Economou, supra,* 438 U.S. at 498, 98 S.Ct. at 2910. These holdings clarify the scope of acts for which officials are entitled to qualified immunity. In the context of alleged violation

---

**2.** Plaintiffs' claims under the First, Fifth and Ninth Amendments are necessarily intertwined with their Fourth Amendment claims. *See Sinclair v. Kleindienst,* No. 610–73, D.D.C., September 23, 1977. Accordingly, we need not consider whether plaintiffs also allege compensable claims under the First, Fifth and Ninth Amendments.

**3.** The Supreme Court has held that "damage suits concerning constitutional violations need not proceed to trial, but can be terminated upon a properly supported motion for summary judgment based upon the defense of immunity." *Butz v. Economou,* 438 U.S. 478, 508, 98

S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). *See also Procunier v. Navarette,* 434 U.S. 555, 566, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

**4.** We do not reach the question whether defendants' actions are also protected under absolute immunity. *Barr v. Matteo, supra.*

**5.** In view of the state of the law at the time defendants acted, it is clear that the constitutional rights alleged to have been violated by defendants were anything but "clearly established." See following discussion under ¶ C.

of the Constitution or Title III, by electronic surveillance, officials are entitled to qualified immunity where they "can demonstrate (1) that they had a subjective good faith belief that it was constitutional to install warrantless wiretaps under the circumstances of this case; and (2) that this belief was itself reasonable." *Zweibon v. Mitchell,* 170 U.S.App.D.C. 1, 78, 516 F.2d 594, 671 (1975).

### B. Subjective Good Faith Belief

■ The affidavits and testimony of the Attorney General adequately demonstrate that the Attorney General subjectively believed that the surveillance of Truong Dinh Hung was in fact constitutional and not prohibited by Title III. *See, e. g.,* AG Affidavit, ¶¶ 7, 16, 17; AG Testimony, pp. 47–48, 77–78. The Attorney General specifically believed that the warrantless surveillance was entirely legal from its inception until its conclusion because it continued to have a foreign intelligence purpose. *See,* AG Affidavit, ¶ 16; AG Testimony, pp. 20–22. Judge Bryan, who heard the testimony of the Attorney General, found this testimony to be convincing. *United States v. Hung, supra,* at 10. We find no reason to doubt that the Attorney General, or those acting under his authority, subjectively believed that they were acting within the bounds of the Constitution and Title III.

### C. Reasonableness of Belief

In order for official acts to be protected by the cloak of qualified immunity, the official's subjective belief in the legality of his action must in fact be a reasonable one. We find there are several considerations which make it reasonable for the defendants to believe that the surveillance of Truong Dinh Hung was legal from its inception to its conclusion.

First, the surveillance of Truong Dinh Hung was not in violation of any "clearly established" constitutional or statutory

right. *See Procunier v. Navarette, supra,* 434 U.S. at 564, 98 S.Ct. 855. The Supreme Court had expressly reserved judgment on whether a warrant is required for foreign intelligence surveillance directed at foreign powers or agents of foreign powers. *United States v. United States District Court,* 407 U.S. 297, 309, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (*Keith* ).[6] The Court of Appeals for this Circuit has also yet to determine whether a warrant is constitutionally required for the surveillance of foreign powers or agents of foreign powers. *See Zweibon v. Mitchell, supra,* 170 U.S.App.D.C. at 21, 516 F.2d at 614. Several Circuit Court decisions, moreover, have recognized that warrantless surveillance of a foreign agent may be constitutionally permissible. The Third Circuit found such surveillance constitutionally permissible but limited its holding to situations in which the "sole purpose" was the gathering of foreign intelligence. *United States v. Butenko,* 494 F.2d 593, 607 (3rd Cir. 1974) (*en banc), cert. denied sub nom., Ivanov v. United States,* 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974). The Ninth Circuit, however, did not impose a strict "purpose" limitation upon the warrant requirement when it issued the broad holding that "[f]oreign security wiretaps are a recognized exception to the general warrant requirement . . ." *United States v. Buck,* 548 F.2d 871, 875 (9th Cir. 1977). *Accord, United States v. Brown,* 484 F.2d 418 (5th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

The applicability of Title III to foreign intelligence surveillance is an equally unsettled area of the law. Section 2511(3) of Title III specifies that the Act does not limit the President's power "to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities." 18 U.S.C. § 2511(3). The Supreme Court in *United States v. United States District*

---

**6.** The Supreme Court stated that "[w]e have not addressed, and express no opinion as to, the issues which may be involved with respect to activities of foreign powers or their agents."

*United States v. United States District Court, supra,* 407 U.S. at 321–22, 92 S.Ct. at 2139 (1972).

*Court, supra, (Keith )*, held that "the Act simply did not legislate with respect to national security surveillance." *Id.* 407 U.S. at 306, 92 S.Ct. at 2131. A plurality of this Circuit has held that a wiretap is *outside* the purview of the Act even if it is not "solely" designed to secure national security information. *See Zweibon v. Mitchell, supra,* 170 U.S.App.D.C. at 19 n.39, 99 n.13, 516 F.2d at 612 n. 39, 692 n. 13. Neither *Keith* nor *Zweibon* provide any criteria for determining whether a warrantless surveillance of a foreign agent is *within* the purview of Title III.

In light of the unsettled state of the law pertaining to the warrant requirement for the surveillance of foreign agents, the Attorney General was clearly reasonable in his belief that a warrant is not required to initiate surveillance of suspected foreign agents. The existing law also provided no guiding principles for determining when the foreign intelligence justification for a warrantless surveillance lapsed into or combined with a prosecutorial or other purpose for which a warrant was required. The Attorney General therefore reasonably could conclude that it was permissible to conduct warrantless surveillance throughout the duration of the wiretap on Truong Dinh Hung.

The reasonableness of the defendants' conduct can also be viewed in light of the need to preserve the Attorney General's discretion to take measures to protect and promote governmental interests in the face of an unsettled body of constitutional and statutory law. The Attorney General is charged with the responsibility to formulate and advocate interpretations of law. This responsibility can only be effectively exercised if the Attorney General is given assurances that he, and those acting under his authority, will not be held "liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou, supra,* 438 at 507, 98 S.Ct. at 2911. The discretion and responsibilities associated with the Office of Attorney General are therefore additional factors which made it reasonable for the defendants to conclude that the surveillance of Truong Dinh Hung was lawful.

IV. Declaratory Relief

■ Plaintiffs seek a declaratory judgment that the interception of plaintiffs' phone conversations with Hung were violations of the Fourth Amendment regardless of whether defendants are entitled to the defense of immunity. Plaintiffs correctly assert that a finding of qualified immunity only bars plaintiffs' claim for damages and would not preclude their claims for equitable declaratory relief. *National Treasury Employees Union v. Nixon,* 160 U.S.App. D.C. 321, 343, 492 F.2d 587, 609 (1974).

■ The general standard for the entry of a declaratory judgment is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of such sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). More specifically, declaratory judgment is appropriate if the challenged government activity is "continuing" and "casts what may well be a substantial adverse effect upon the interests of the petitioning parties." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). *See also Ellis v. Dyson,* 421 U.S. 426, 433, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975). A second consideration in determining whether to issue a declaratory judgment is whether the issue in question can be more properly resolved in another forum. *Hanes Corp. v. Millard,* 174 U.S.App.D.C. 253, 264, 531 F.2d 585, 596 (1976). Operating under the guidance of these standards, federal courts have the discretion to determine whether a declaratory judgment should be awarded. *Hanes Corp. v. Millard, supra,* 174 U.S.App.D.C. at 259, 531 F.2d at 591.

■ We first find that the challenged surveillance does not pose an immediate adverse threat to plaintiffs. The surveillance at issue in this litigation terminated

at the time that the indictments of Hung and Humphrey were returned. *See* AG Affidavit ¶ 16. There is nothing in the complaint or in the circumstances which gave rise to the surveillance of Truong Dinh Hung to indicate that there is a reasonable likelihood that there will be a future warrantless wiretap during which the plaintiffs will be incidentally overheard.

The recent action of the Congress also makes this a particularly inappropriate case for a declaratory judgment. On October 25, 1978, it passed the Foreign Intelligence Surveillance Act of 1978, Pub.L.No. 95–511, 92 Stat. 1788, 50 U.S.C. § 1801. This Act specifies in elaborate detail the procedures which are to be followed for conducting electronic surveillance within the United States for foreign intelligence purposes. These procedures will apply to future electronic surveillances, such as that at issue in this case, where the Attorney General authorizes the surveillance of suspected foreign agents. A declaration of the validity *vel non* of the surveillance at issue in this action would therefore provide no guidance to federal officials in the future surveillance of suspected foreign agents.

Furthermore, the precise constitutional and statutory issues raised here are currently being litigated. The Fourth Circuit Court of Appeals has before it the appeal of Judge Bryan's ruling in *United States v. Hung, supra,* regarding the legality of the surveillance of Truong Dinh Hung. To the extent that it is necessary to have a determination of the Constitutionality of this surveillance, we find that the Fourth Circuit Court of Appeals is the appropriate forum and deny plaintiffs' motion for declaratory relief.

An order consistent with this opinion has been entered this day.