**FRATERNAL ORDER OF POLICE, D.C. et al., Plaintiffs,**

v.

**Robert E. RUBIN, Secretary, Department of Treasury, et al., Defendants.**

No. CIV. A. 96–01434(HHK).

United States District Court, District of Columbia.

Jan. 26, 2001.

Eric S. Lipsetts, Jepsen & Lipsetts, Annapolis, MD, Stephen Girard De Nigris, Washington, DC, William George Jepsen, Jr., Crofton, MD, for Plaintiffs.

William Mark Nebeker, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiffs seek declaratory and injunctive relief to redress alleged infringements of their First Amendment rights by defendants. Currently before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative for summary judgment. After reviewing the motion, plaintiffs' opposition thereto, and the record of this case, the court grants defendants' motion and dismisses this case as moot.

## I. BACKGROUND

This case arises from an investigation conducted by the United States Secret Service Uniform Division ("USSS/UD" or the "Uniformed Division") into the unauthorized release of a videotape recording of an April 24, 1996, meeting where department policy regarding the enforcement of District of Columbia laws was discussed. The underlying facts are set forth in more detail in this court's Memorandum Opinion and Order of October 30, 1998, and need not be further restated here. *See Fraternal Order of Police v. Rubin*, 26 F.Supp.2d 133, 137–38 (D.D.C.1998). Since that Memorandum Opinion and Order were issued, however, there have been several significant developments.

First, the internal investigation into the release of the videotape has concluded. No adverse action has been initiated against any plaintiffs as a result of this investigation. *See* Defs.' Mot. to Dismiss or for Summ. J., Decl. of George D. Rogers ¶ 3 ("Rogers Decl."). Second, the Uniformed Division has issued a new policy expressly prohibiting the taping of internal agency meetings, the conduct that triggered the investigation at issue in this case.[1] Third, three of the five defendants

---

1. The Secret Service Uniformed Division Manual Section UND–002 ("Protection of Documents and Unwritten Information") now provides in part:

 Uniformed Division members may not wear or carry any recording device while in official uniform or while attending any official meeting or function, or whenever on duty, without the prior written consent of the Chief. Likewise, members may not record, or cause to be recorded, using audio or video recording devices, any official Uni-

whose conduct is in dispute are no longer employed by the Secret Service. Defendants Eljay Bowron and Richard Friedman, who allegedly ordered the investigation, and defendant Michael Prendergast,[2] who helped conduct the investigation, have all left the Secret Service. *See* Defs.' Mot. to Dismiss or for Summ. J. Decl., of Barbara A. Saliunas ¶ 2 ("Saliunas Decl."); Defs.' Reply Mot. to Dismiss or for Summ. J. Decl., of Dennis Holley ¶ 2 ("Holley Decl."). Additionally, Deputy Chief Steve Johnson, who was videotaped at the April 24 meeting, and four plaintiffs, Larry Carbone, William R. Dykes, Lucinda Cusimano, and Dennis McCullough, have also left the Secret Service. *See* Defs.' Mot. to Dismiss or for Summ. J., Dep. of Dana A. Brown at 35 ("Brown Dep.") & Saliunas Decl. ¶ 2.

Pursuant to this court's October 30, 1998, Memorandum Opinion and Order, the only issues that remain for adjudication are the requests for declaratory and injunctive relief to remedy the First Amendment violations alleged in Counts II, III, and V of the complaint. Count II alleges that the investigation into the recording and release of the videotape did not serve any legitimate goal, and was designed only to discourage association with the Fraternal Order of Police ("FOP"). Count III focuses on the investigation's alleged interference with plaintiffs' ability to have meaningful discussions with their counsel. Lastly, in Count V plaintiffs assert that their rights were infringed upon because they were prohibited from disclosing to others—including their counsel or each other—statements made to investigators during the course of the

investigation. Because of the changed circumstances, defendants request that the court dismiss the matter as moot and for failure to state a claim, or in the alternative grant them summary judgment. Plaintiffs refute these arguments and maintain that there are genuine issues of material fact that preclude a grant of summary judgment.

## II. DISCUSSION

Article III section 2 of the United States Constitution limits the jurisdiction of federal courts "to the decision of 'Cases' or 'Controversies.'" *Arizonans For Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). In order for a case to be justiciable in a federal court, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 67, 117 S.Ct. 1055 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). A plaintiff requesting declaratory relief to prevent future acts must further demonstrate that harm resulting from such acts is "actual or imminent, not conjectural or hypothetical. . . . Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Houston, Texas v. Dep't of Housing and Urban Development*, 24 F.3d 1421, 1429 n. 6 (D.C.Cir.1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotations and citations omitted). When a plaintiff attacks an isolated action,

---

formed Division activity, including, but not limited to any part of a roll call or meeting, without the prior written consent of the Chief.

Defs.' Mot. to Dismiss or for Summ. J. at Ex. C.

2. In their reply memorandum dated August 31, 2000, plaintiffs make the point in support of their argument that defendant Prendergast still works for the USSD/UD. Subsequently, however, defendant Prendergast retired from the Secret Service effective October 7, 2000.

rather than an ongoing policy, "the resolution of the claim moots any request for declaratory relief." *Humbles v. District of Columbia,* No. Civ.A. 97–1924(TAF), 2000 WL 246578 (D.D.C. Feb. 18, 2000). Appropriately, the mootness doctrine has been described as "the standing doctrine set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)).[3]

 There are, however, several specific exceptions to the mootness doctrine. First, voluntary cessation of challenged conduct does not render an issue moot unless the party asserting a mootness defense demonstrates that "(1) it can be said that 'there is no reasonable expectation . . .' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (internal citations omitted). Second, a case should not be declared moot when the action in question is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The application of the "capable of repetition, yet evading review" exception has been limited to cases where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be sub-

jected to the same action again." *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam* )).

In an attempt to persuade the court that its claims are not moot-because the challenged conduct is likely to reoccur—plaintiffs seek to broaden the scope of their original action. There is no doubt that the investigation plaintiffs challenged in their complaint has concluded, but plaintiffs maintain that a similar investigation, employing similar techniques, may arise in the future. However, this is not what plaintiffs alleged in their complaint. They sought declaratory and injunctive relief specifically related to the then-ongoing investigation; they did not seek a general nullification of the internal investigative techniques used by the Secret Service. As the D.C. Circuit has noted, "[t]he more broadly we define the wrongful conduct, the more numerous are the possible examples, and the greater the likelihood of repetition." *Clarke v. United States,* 915 F.2d 699, 703 (D.C.Cir.1990) (en banc). In *Clarke,* a group of District of Columbia Council members challenged as a violation of the First Amendment, Congress' practice of "coercing" council members' votes by withholding appropriated funds. In opposing mootness, the plaintiffs framed their argument broadly, attacking the practice generally. Yet in their complaint, the plaintiffs challenged the coercive conduct only in the context of one particular piece of legislation. In finding the case moot, the court held that "where plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader

---

**3.** Although this description of mootness has been cited with approval by the Supreme Court, the Court recently noted that under certain circumstances it "is not comprehensive." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000) (Ginsburg, J.). In the context of this case, however, it provides a helpful characterization.

notion of their injury than the one on which they originally sought relief." *Id.*

■ Likewise, in this case plaintiffs' complaint does not allege systematic coercive conduct on the part of the Secret Service. Although in their opposition memorandum plaintiffs express the concern that defendants will "order members of the FOP to disclose the same information in the future as part of another contrived investigation or effort to break the FOP," this is not reflected in the complaint. *See* Pls.' Opp'n at 13–14. Counts II, III, and V focus exclusively on the manner in which this particular investigation was conducted. In instances like this where "a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful," unless one of the exceptions to the mootness doctrine applies. *City of Houston*, 24 F.3d at 1429; *see also Flynt v. Weinberger*, 762 F.2d 134 (D.C.Cir.1985) *(per curiam )* (holding that a challenge of the "press ban" during the military action in Grenada was moot after the military action ended because plaintiffs failed to allege ongoing conduct); *Spivey v. Barry*, 665 F.2d 1222, 1234–35 (D.C.Cir. 1981) (holding that the claim was moot because it was "sharply focused on a unique factual context" not likely to recur); *Humbles*, 2000 WL 246578, at \*3 (holding that declaratory relief is not appropriate where plaintiff challenged a specific arrest and "neither alleged nor demonstrated that there was an ongoing policy involved").

■ Under this more limited reading of the challenged conduct, the facts support the conclusion that this matter is moot, and neither the voluntary cessation exception, nor the "capable of repetition, yet evading review" exception alter this finding. The challenged conduct has stopped, and is not likely to reoccur in the same context. Any future harm is purely "conjectural or hypothetical," and as such declaratory relief is not appropriate. *City of Houston*, 24 F.3d at 1429 n. 6; *see also Chagnon v. Bell*, 468 F.Supp. 927, 933 (D.D.C.1979) (holding that declaratory judgment is appropriate where the challenged conduct is "continuing" and "casts what may well be a substantial adverse effect upon the interests of the petitioning parties." (quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974))). The conduct in question stems from an investigation into the videotaping of the April 24, 1996, meeting, and the subsequent release of that videotape. This investigation has since concluded. There is no reason to believe that the investigation will be reopened. No adverse action was initiated against any plaintiffs as a result of this investigation. Furthermore, Eljay Bowron and Richard Friedman, the employees who ordered the investigation, are no longer employed by the Secret Service. Additionally, when "estimating the likelihood of an event's occurring in the future, a natural stating point is how often it has occurred in the past." *Clarke*, 915 F.2d at 704. In neither the compliant, nor their papers, do plaintiffs suggest the occurrence of any similar previous First Amendment violations by the Secret Service.

Further emphasizing the conclusion that the challenged conduct is not likely to reoccur is the fact that the revised USSS/UD manual expressly prohibits unauthorized recordings like the one that gave rise to this case. While this court previously concluded that "it is doubtful that the release of the videotape was a violation of agency rules," the subsequent amendment of the USSS/UD manual now makes clear that such conduct is not per-

missible. *Fraternal Order of Police*, 26 F.Supp.2d at 143 n. 6. Plaintiffs are correct that in this case there is a genuine dispute as to whether the release of the recordings was unauthorized. *See* Pls.' Opp'n at 22. Given the new USSD/UD policy, however, no such dispute would exist even if these events were to reoccur. If a secret recording were made and released at a future date, any potential investigation would be evaluated in light of a prohibition that did not exist when the events in this case transpired.

Nonetheless, plaintiffs maintain that because the Secret Service has not changed its investigative techniques, the alleged conduct will reoccur in the future. They maintain that the USSS/UD "conducts regular internal investigations of its employees," Pls.' Opp'n at 15, and that coercive conduct will again be used. They further assert that both the FOP and the individual plaintiffs suffer continuing harm due to the possibility that "another investigation will commence involving the same illegitimate tactics." Pls.' Opp'n at 17. Following this logic, the only way to prevent future violations is for the court to categorically delineate exactly what investigative practices are permissible. This, however, the court cannot do. Because the challenged investigation has concluded, and because the specific circumstances of any future investigations are unknown, such a ruling would resemble a constitutionally-prohibited advisory opinion. *See Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C.Cir.1986).

Similarly, to the extent that Counts III and V of the complaint focus on the allegation that the investigation illegally inhibited communications between plaintiffs and their legal counsel, these claims now suffer from the same flaws discussed above and are moot. Again, the investigation has concluded, and is unlikely to recommence.

Even assuming that similar conduct were to reoccur in the future, the court cannot at this time predict the circumstances of, or parties to, these hypothetical future violations. An evaluation of the relationship between an attorney and a client is extremely fact intensive. *Cf. The Wackenhut Corp. v. N.L.R.B.*, 178 F.3d 543, 557 n. 11 (D.C.Cir.1999) ("The determination of who can claim attorney-client privilege on behalf of an organization and in what situations is a highly fact-specific inquiry."). The court cannot speculate about: who will be a involved in future investigations; the nature of their communications with counsel; how the Secret Service may attempt to inhibit these communications; or whether such activity would infringe on a future plaintiff's First Amendment rights.

Plaintiffs allege in Counts II, III, and V that the internal Secret Service investigation infringed their First Amendment rights, however, such conduct is in the past and has ceased. Under the voluntary cessation inquiry, defendants have satisfied their burden of demonstrating to this court that the challenged conduct has ceased and is not likely to recommence. Furthermore, plaintiffs have failed to persuade the court that the challenged activities are "capable of repetition, yet evading review." Even if the court were persuaded that a similar incident could arise in the future, given the nature of this dispute declaratory or injunctive relief would be inappropriate. Because this court finds that an actual controversy no longer exists, and any future harm is merely theoretical, this case is dismissed as moot.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted. An appropriate order accompanies this memorandum.

## JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 26th day of January, 2001, hereby

**ORDERED and ADJUDGED** that defendants' motion to dismiss for lack of subject matter jurisdiction is granted; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is **DISMISSED.**