**DAVOX CORPORATION, Plaintiff,**

v.

**DIGITAL SYSTEMS INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 92–11515WF.**

United States District Court, D. Massachusetts.

Jan. 25, 1993.

---

Steven M. Bauer and Susan A. Cardoza, Testa, Hurwitz & Thibeault, Boston, MA, for plaintiff.

James E. Cockfield, Lahive & Cockfield, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. INTRODUCTION

After receiving inquiries from defendant Digital Systems International ("DSI") expressing concerns that its patent was being infringed, and after representing that it would respond by letter to those concerns, plaintiff Davox Corporation ("Davox"), whose principal place of business is in Billerica, Massachusetts, filed this action for declaratory relief against DSI, on June 18, 1992. Davox originally requested a declaratory judgment that defendant's patent-in-suit is invalid, unenforceable and not infringed by plaintiff. One day later, DSI, a Washington corporation whose principal place of business is

Redmond, Washington, filed suit in the Western District of Washington, seeking damages and an injunction against Davox for alleged infringement of the same patent. Davox subsequently amended its complaint and filed its own patent infringement claims against Digital in this court.

DSI has moved for dismissal of Davox's declaratory judgment action for lack of subject matter jurisdiction, claiming that no case or controversy existed at the time Davox filed its suit in the District of Massachusetts. DSI also has moved for transfer of all of the remaining issues presented by Davox's amended complaint to the Western District of Washington. Davox has petitioned the court in the Western District of Washington to have the case filed by DSI transferred to this court, in the interest of avoiding duplicative litigation. That court has issued a stay of the action in Washington, pending this court's ruling on DSI's motions to dismiss or to transfer.

As explained below, it would be contrary to important public policies discouraging needless litigation to reward Davox's race to the courthouse by giving preference to its choice of forum. Accordingly, the court will exercise its discretion to dismiss Davox's complaint for declaratory judgment and, in the interests of judicial economy and avoiding duplicative litigation, will transfer Davox's additional patent infringement claims to the Western District of Washington.

## II. FACTUAL AND PROCEDURAL BACKGROUND

DSI and Davox compete for the manufacture and sale of computer auto-dialers, which allow business organizations to place simultaneously large numbers of telephone calls. In its most recent Securities and Exchange Commission Form 10–K filing, DSI names Davox as one of its primary competitors in the industry. (Attached as Exhibit B to Plaintiff Davox Corporation's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Davox Memorandum")).

The current controversy began with a letter dated April 16, 1992, sent by DSI to Douglas H. Ebstyne ("Ebstyne"), a Davox employee who had earlier been employed by DSI. (Attached as Exhibit A to Declaration of Wm. Bradford Weller in Support of Defendant's Motion to Dismiss ("Weller Aff.")). The letter opens by reminding Ebstyne of his alleged obligations to honor the confidentiality of DSI's trade secrets and specifically warns him that DSI "will take any and all appropriate action against you and/or your new employer to enforce" the agreements relating to trade secrets. Id. In that same letter, DSI raises the issue that spawned the present lawsuit. In its final paragraph the DSI letter suggests that a product marketed by Davox, the "Smart Management Center," is similar to DSI's "Realtime Monitor," covered by DSI's U.S. patent No. 5,101,425. The letter closes by inviting Davox to "have the appropriate person at Davox review the patent claims, and, if Davox believes that the monitoring capabilities of [the Davox product] ... are not covered by the patent, provide us with a detailed explanation of how Davox reached that conclusion." Id.

Apparently after not having received a reply from Davox to its April 16, 1992 letter, DSI sent a second letter to Davox, dated May 8, 1992. Weller Aff.Exh. B. That letter, again addressed to Ebstyne, opens by accusing the former DSI employee of lying to customers about his reasons for terminating his employment with DSI. Id. The letter continues by asserting that Davox's Smart Management Center "appear[s] to fall within the scope of DSI's patent claims." The letter concludes by once again requesting that Davox respond by letter to DSI's contentions.

By letters dated May 14, 1992, and June 2, 1992, Davox's General Counsel responded to DSI's claims concerning Ebstyne and the potential patent dispute. In those letters counsel for Davox stated that DSI's patent inquiry had been referred to Davox's patent counsel, and promised that DSI would get a response directly from that firm. Weller Aff.Exhs. C and D.

DSI, however, never got the promised direct response from Davox's patent counsel. Instead, Davox filed the instant lawsuit on June 18, 1992. Davox claims that it filed suit in part because the company had learned that a DSI employee, Joe White, had told a prospective customer that DSI was suing

Davox for patent infringement on its Real-time Monitor. Affidavit of James F. Mitchell ¶ 3. DSI and White vigorously deny that any such statement was made. Declaration of Joseph P. White (appended as Exhibit A to Defendant's Motion for Leave to File a Reply Memorandum).

As described earlier, DSI filed a patent infringement suit against Davox in the Western District of Washington one day after Davox filed the instant suit. On July 20, 1992, DSI filed its motion to dismiss Davox's declaratory judgment action, asserting a lack of subject matter jurisdiction. On July 27, 1992, Davox amended its complaint to include counts of patent infringement against DSI on two Davox patents. DSI subsequently filed a motion to transfer the entire dispute to the Western District of Washington, while reasserting its contention that this court lacks subject matter jurisdiction over Davox's original declaratory judgment action.

III. DISCUSSION

■■■■ This court has subject matter jurisdiction over plaintiff's declaratory judgment action only if a case or controversy existed between the parties at the time the complaint was filed. *See Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 882 (Fed. Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). Whether an actual case or controversy did exist at the time of filing must be determined by considering the "totality of the circumstances." *Id.; see also Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). To conclude that a case or controversy existed in cases involving allegations of patent infringement, the court must find that (1) the accused infringer has actually produced or prepared to produce the allegedly infringing product; and (2) the patent holder's conduct must have created an objectively reasonable apprehension on the part of the accused that the patent holder will initiate legal action. *See Id.; see also Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed.Cir.1987).

Based on the totality of the circumstances, the court finds that a case or controversy existed at the time Davox filed its declaratory judgment action. The parties do not dispute that Davox is marketing the allegedly infringing product. Thus, the first prong of the case or controversy test is satisfied. Furthermore, the court finds that the two letters sent by DSI, asserting that Davox's Smart Management Center appeared to fall within the scope of DSI's patent, created an objectively reasonable apprehension of litigation on the part of Davox. Though the letters appear to invite Davox to formulate its own position on the matter and contact DSI to begin extrajudicial resolution of the matter, the letters unambiguously convey DSI's position that it considers Davox's product to be an infringement on its patent-in-suit. Particularly when considered in light of the accusations against Ebstyne, which place the patent allegations within an acrimonious context, this court concludes that these letters created a reasonable apprehension that DSI would initiate legal action.[1] Therefore, the court may exercise subject matter jurisdiction over Davox's declaratory judgment action.

■■■■ The finding that jurisdiction exists does not, however, end the court's inquiry. The exercise of jurisdiction over declaratory judgment actions is left to the sound discretion of the district courts. *See Spectronics* 940 F.2d at 634; *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 n. 6 (Fed.Cir.1988). Generally, as is strongly urged by plaintiff, the first filed case is given priority, and will not be dismissed in favor of a suit subsequently filed in another jurisdiction. *See Kahn v. General Motors Corp.* 889 F.2d 1078, 1081 (Fed.Cir.1989). However, giving priority to the first-filed case is not a rigid rule; rather, " 'the factors relevant to wise administration here are equitable in nature' " *Boston and Maine Corp. v. United Transp. Union*, 110 F.R.D. 322, 331 (D.Mass. 1986) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1953)). The

---

1. Because the court finds that the DSI letters alone were sufficient to instill in Davox a reasonable apprehension of legal action, it need not resolve the factual dispute surrounding the alleged statement by DSI's employee Joe White to a prospective customer.

equities in this case dictate a transfer to the Western District of Washington.

Rather than initiate preemptive litigation in Washington, DSI sent letters to Davox which were ominous enough to generate a reasonable apprehension of a lawsuit, but also invited Davox to address DSI's concerns and attempt to avoid potentially expensive and time-consuming litigation based upon misunderstandings rather than informed, intractable disagreements. As explained by DSI in its Memorandum, Davox's response to DSI's inquiry could have initiated various courses of dealing between the parties that would have fallen short of litigation. Memorandum Supporting Defendant's Motion to Dismiss at 6, n. 4. DSI may have been convinced that Davox's product did not, in fact, infringe on its patent. If DSI were not convinced, the parties may have entered into negotiations for a license, or may have sought alternatives to litigation as the means of resolving their dispute. Rather than responding to the invitation to enter into discussions to resolve the matter, as Davox represented it would, Davox filed this action in an evident effort to obtain a forum more convenient to it than the Western District of Washington.

This court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources. *See Bausch & Lomb Inc. v. Alcide Corp.,* 684 F.Supp. 1155, 1160 (W.D.N.Y.1987) (refusing to exercise declaratory judgment jurisdiction over suit filed after plaintiff received letter accusing plaintiff of trademark infringement but which presented an opportunity to resolve the matter out of court). As was aptly stated by the court in *Columbia Pictures Indus., Inc. v. Schneider:*

[a]s federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by reasonable discussions between reasonable people, be settled out of court. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing. . . .

435 F.Supp. 742, 747 (citations omitted) (staying declaratory judgment suit brought six days prior suit brought by the patent holder, because allowing the declaratory judgment suit to go forward would "create disincentives to responsible litigation" by rewarding the winner of a race to the courthouse), *aff'd,* 573 F.2d 1288 (2d Cir.1978); *see also American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc.,* 379 F.2d 376 (7th Cir.1967) ("The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of an expensive and burdensome declaratory judgment suit. . . .").

Here, Davox should not be permitted to take advantage of the fact that DSI responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by Davox's responses to its letters.[2] It is particularly important that such tactics not be validated now, shortly after Congress and the President have directed the courts of the United States to develop and implement plans to reduce the expense and delay of civil litigation. See The Civil Justice Reform Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, codified at 28 U.S.C. §§ 471–482 (Supp.1992) (the "Act"). The

---

**2.** This analysis is not altered by the possibility that a DSI employee told a prospective customer that DSI was planning to sue Davox. If DSI had been menacingly threatening customers with litigation, Davox might arguably have acted properly in filing a declaratory judgment action. Here, however, the allegation is of a single incident, which Davox evidently did not seek to verify by contacting DSI directly. Under these circumstances, and in light of the invitation by DSI to respond to its inquiry, Davox should have pursued extrajudicial negotiations, prior to initiating litigation.

District of Massachusetts has recently adopted new Local Rules to implement its Civil Justice Delay and Expense Reduction Plan (the "Plan"), mandated by the Act. 28 U.S.C. §§ 471–482. These new Local Rules are designed to foster cooperation between litigants, to curtail discovery disputes and to promote settlement and alternative dispute resolution. See Local Rules of the District Court for the District of Massachusetts, Rules 16.1, 16.4, 26.1. In light of the present, strong public policy discouraging unnecessary litigation, it would be inconsistent with the reformed legal culture and conduct the Act and the Plan seek to promote for this court to exercise its discretionary jurisdiction over Davox's declaratory judgment claim. Accordingly, the court is granting DSI's motion to dismiss that claim.

In light of this decision, the court also will grant DSI's motion to transfer Davox's claims of patent infringement against DSI to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). The Western District of Washington is now the only forum in which all of the related patent claims pending between the parties can be resolved. Both parties agree that the factual issues to be determined in Davox's patent infringement counts will overlap substantially with those at issue in DSI's suit against Davox pending in the Western District of Washington. See Defendant's Memorandum Supporting Defendant's Motion to Transfer at p. 3, and Exh. A. Since these cases, concerning similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties. See *Comptroller of Currency v. Calhoun First Nat. Bank*, 626 F.Supp. 137 (D.D.C.1985); *cf. Abbott Laboratories v. Gardner*, 387 U.S. 136, 154–55, 87 S.Ct. 1507, 1518, 18 L.Ed.2d 681 (1967) (discussing district court's power to avoid multiplicitous litigation resulting from declaratory judgment jurisdiction). Therefore, in the interests of justice, this court will transfer the remaining counts in plaintiff's amended complaint to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a).

## IV. ORDER

For the foregoing reasons, it is hereby ORDERED that:

1. Defendants motion to dismiss Count I of plaintiff's Amended Complaint is ALLOWED.

2. Defendant's motion to transfer the remaining counts of plaintiff's Amended Complaint, pursuant to 28 U.S.C. § 1404(a), is ALLOWED.