**COMTEC INFORMATION
SYSTEMS, INC.**

v.

**MONARCH MARKING SYSTEMS, INC.**

C.A. No. 96–540–T.

United States District Court,
D. Rhode Island.

May 5, 1997.

**16**

Mark A. Pogue, Alicia M. Milligan, Edwards & Angell, Providence, RI, Douglas J. Kline, Stephen M. Bauer, Testa, Hurwitz and Thibeault, Boston, MA, for Plaintiff.

Robert D. Fine, Chace, Ruttenberg & Freedman, Providence, RI, George P. McAndrews, Jean D. Kuelper, Thomas J. Wimbiscus, Peter J. McAndrews, McAndrews, Held & Malloy, Ltd., Chicago, IL, for Defendant.

### MEMORANDUM AND ORDER

TORRES, District Judge.

Comtec Information Systems, Inc. (Comtec) brought this declaratory judgment action against Monarch Marking Systems, Inc. (Monarch), seeking a declaration that certain Comtec products do not infringe upon Monarch's patents. This Memorandum and order sets forth, in greater detail, the reasons for the Court's previous bench decision denying Monarch's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

### Background

For some time, Monarch has manufactured and sold a device that prints and affixes labels to various products. Upon learning that Comtec had developed a similar product, Monarch's patent counsel, on July 22, 1996, wrote to Comtec stating that "it appears that [the Comtec] printer is infringing on a number of Monarch patents" and indicating that "needless litigation" could be avoided if Comtec would send one of its printers to Monarch for its inspection. Comtec's patent counsel responded by requesting identification of the patents at issue.

In a reply letter, Monarch's patent counsel provided the requested information; expressed Monarch's desire to resolve the matter without delay and stated that "courts look extremely unfavorably upon infringers who intentionally jump the gun before a patent expires." Shortly thereafter, still not having received a Comtec printer to inspect, Monarch's patent counsel again wrote to Comtec, saying, "unless the printer, manuals, and labels are provided forthwith, Monarch will have no choice but to proceed accordingly."

On August 27, 1996, the parties met in Rhode Island, and Monarch representatives were allowed to inspect a Comtec printer. At that meeting, Comtec's patent counsel suggested a moratorium on litigation while the parties attempted to resolve their differences, but Monarch's patent counsel disclaimed any authority to enter into such an agreement on behalf of his client. A meeting to discuss the possibility of a settlement was scheduled for October.

During the interim, the parties continued to correspond and Monarch's patent counsel "reiterat[ed]" his lack of authority to agree to a moratorium on litigation. However, Comtec's patent counsel continued to press for a moratorium, stating in one of his letters that "[a]s to either party not commencing an action while we continue discussions, such courtesy is desirable and should be implemented."

On September 19, 1996, Comtec filed a complaint commencing this declaratory judgment action but did not serve Monarch or tell Monarch that a complaint had been filed. Around the same time, Monarch had begun drafting its own complaint.

On October 15, 1996, the meeting to discuss settlement took place. When no agreement was reached, Monarch informed Comtec that Monarch would be filing an infringement action in the Southern District of Ohio and, in fact, did so on that same day.

### Discussion

Monarch makes two arguments in support of its motion to dismiss:

1. That this Court lacks subject matter jurisdiction because the Constitutional requirement of a "case or a controversy" has not been satisfied.

2. Even if the Court has jurisdiction, it should decline to exercise its jurisdiction for equitable and policy reasons.

## I. Existence of a Case or Controversy

Federal courts were not created to render advisory opinions. Their jurisdiction extends only to situations in which an actual case or controversy exists between the parties at the time an action is commenced. *Wang v. N.H. Bd. of Registration in Med.,* 55 F.3d 698, 702 (1st Cir.1995) (citing *United States Nat'l Bank of Or. v. Independent Ins., Agents of Am. Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993)).

Whether a case or controversy exists must be determined from the "totality of the circumstances." *Davox Corp. v. Digital Systems Int'l, Inc.,* 846 F.Supp. 144, 147 (D.Mass.1993) (citations omitted). In a declaratory judgment action brought to establish the absence of patent infringement, the "case or controversy" requirement demands a showing that:

1. The alleged infringer has produced or has prepared to produce the allegedly infringing product and

2. The patent holder's conduct has created an objectively reasonable apprehension on the part of the alleged infringer that legal action will be initiated against it.

*GAF Building Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 481 (Fed.Cir.1996) (citation omitted); *Davox,* 846 F.Supp. at 147.

In this case, it is undisputed that Comtec was producing and marketing its printer. Therefore, the issue is whether Monarch's conduct created a reasonable apprehension on the part of Comtec that it was about to be sued by Monarch.

I find that Comtec did have such a reasonable apprehension. Although Monarch's initial letter indicated a willingness to discuss the situation, it expressed the opinion that Comtec's printer appeared to be "infringing a number of Monarch patents" and alluded to the possibility of "needless litigation." A later letter made it clear that Monarch would brook no delay in resolving the matter, pointedly noting that "courts look extremely unfavorably upon infringers who intentionally jump the gun before a patent expires" and stating that unless Comtec acted promptly, "Monarch will have no choice but to proceed accordingly." The ominous implications of those statements were underscored by Monarch's failure to agree to a moratorium on litigation pending the outcome of settlement discussions.

Under the circumstances, it was eminently reasonable for Comtec to interpret Monarch's statements as an accusation of infringement and to conclude that legal action was imminent. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997) (even in the absence of an express charge of infringement, a reasonable apprehension exists if the circumstances indicate that the patent holder intends to take action to enforce its patent); *see also Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988). The fact that Monarch began preparing an infringement complaint before negotiations broke down confirms that Comtec's belief was well founded.

In short, here, the jurisdictional requirement that a "case or a controversy" exist has been satisfied.

## II. Discretion to Decline to Exercise Jurisdiction

The fact that jurisdiction exists is not dispositive of Monarch's motion to dismiss. A federal court has discretion to decline to exercise jurisdiction over a declaratory judgment action. *Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995); *Aetna Cas. & Sur. Co. v. Kelly,* 889 F.Supp. 535, 539 (D.R.I.1995).

Whether that discretion should be exercised depends upon the circumstances.

In this case, Monarch advances two reasons for declining to entertain Comtec's declaratory judgment action and, in effect, deferring to the Ohio suit initiated by Monarch. First, Monarch argues that it was "ambushed" because it delayed filing its Ohio suit in reliance upon false representations by Comtec that no legal action would be initiated while discussions between the parties were in progress. In addition, Monarch argues that allowing this case to proceed would subvert the policy of encouraging voluntary settlements.

When multiple actions are brought to determine whether a patent has been infringed, the general rule is that the action first commenced takes precedence unless the just and effective disposition of the dispute requires otherwise. *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir. 1993), *cert. denied*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994). The burden is on the party seeking dismissal of the prior action to establish sufficient reason for dismissing it. *McDowell Oil Serv., Inc. v. Interstate Fire and Casualty Co.*, 817 F.Supp. 538, 544 (M.D.Pa.1993) (citation omitted).

In order to prevail on its "ambush" theory, Monarch must demonstrate that:

1. Comtec falsely represented that it would not sue Monarch during the pendency of discussions between the parties and

2. Monarch, in reliance upon that representation, refrained from suing Comtec.

*See Kmart Corp. v. Key Indus., Inc.*, 877 F.Supp. 1048, 1053 (E.D.Mich.1994) (critical issue is "whether the plaintiff in the earlier-filed declaratory judgment action misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse...."); *Davox*, 846 F.Supp. at 148 ("[Plaintiff] should not be permitted to take advantage of the fact that [defendant] responsibly deferred filing potentially protracted and expensive litigation...."); *see also Biogen, Inc. v. Schering AG*, 954 F.Supp.

391, 399 (D.Mass.1996) (denying motion to dismiss, partly because plaintiff's agreement to a settlement meeting was not made for purpose of lulling defendants into delaying suit so that plaintiffs could sue first).

Here, Monarch has failed to make either showing. It identifies the alleged misrepresentation as the following statement contained in the August 29 letter from Comtec's patent counsel: "As to either party not commencing an action while we continue discussions, such courtesy is desirable and should be implemented." However, that statement, on its face, does not constitute a representation that Comtec would refrain from initiating legal action. Rather, it was an expression of Comtec's wish that legal action not be taken by *"either* party."

Moreover, Monarch fails to mention that it never accepted Comtec's repeated proposals of a moratorium on litigation. As already noted, on two occasions before the August 29 letter was sent, Monarch's patent counsel disclaimed authority to agree to any such moratorium and, after the August 29 letter, Monarch gave no indication that it would agree to a moratorium.

In addition, Monarch has not demonstrated that it refrained from filing its suit in reliance on a belief that Comtec had made a commitment not to initiate legal action. On the contrary, Monarch's counsel candidly conceded that Monarch did not consider itself bound to refrain from suing but did so only because it was "not the kind of company that would initiate litigation while discussions were being conducted." He further acknowledged that Monarch began drafting its infringement complaint approximately two weeks before the October 15 meeting because it was afraid that Comtec would sue. That apprehension indicates that Monarch had no illusions about Comtec's freedom to take action.

Monarch also has failed to establish that allowing this case to proceed would subvert the policy of encouraging extra judicial resolution of disputes by rewarding Comtec for bringing suit while settlement discussions were continuing.

It is true that the strong public interest in fostering the informal resolution of disputes may result in the dismissal of a declaratory judgment action if the action is brought to gain an unfair tactical advantage and it undermines the prospect of a negotiated settlement. *See EMC,* 89 F.3d at 815 (district court did not abuse its discretion when it dismissed declaratory judgment action because plaintiff filed action in face of ongoing negotiations); *Davox,* 846 F.Supp. at 148 ("[I]t would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution....."). However, Monarch's argument rings hollow when considered in light of the fact that Monarch, itself, was drafting a complaint at about the same time as Comtec and Monarch filed that complaint on the day of the October 15 meeting. Thus, Monarch hardly is in a position to cry "foul."

Nor is there any indication that Comtec's complaint had any effect on the prospect of settlement. Since Monarch was unaware of Comtec's suit until after negotiations had broken down, the initiation of that suit could not have influenced Monarch in its conduct of the "settlement negotiations." Nor is there any indication that it affected the manner in which Comtec approached those negotiations. There is no suggestion that, after filing suit, Comtec failed to proceed with those discussions in good faith. On the contrary, the evidence is that Comtec's president and several other representatives of the company attended the October 15 meeting and made a lengthy settlement proposal. It is difficult to see why Comtec would have taken such action if it was not earnestly seeking an amicable settlement of the dispute at that time.

In short, some tactical maneuvering occurs in the litigation of most commercial disputes. Within rather broad and ill-defined boundaries such maneuvering is permissible as an inevitable part of the process. As long as those boundaries are not crossed, the Court should refrain from taking drastic action, such as dismissal of a case based upon "fine line" subjective judgments with respect to the tactics employed or their possible effect on ephemeral possibilities of settlement.

Rather, the Court should reserve such action for situations where an injustice would be created or realistic prospects of settlement are undermined. This case does not present one of those situations.

### *Conclusion*

For all of the foregoing reasons, Monarch's motion to dismiss is denied.

IT IS SO ORDERED.