**LYONS INDUSTRIES, INC., Plaintiff,**

v.

**AMERICAN STANDARD, INC., Defendant.**

**No. 4:97–CV–127.**

United States District Court, W.D. Michigan, Southern Division.

Nov. 21, 1997.

---

**610**

Craig H. Lubben, Miller, Johnson, Snell & Cummiskey, PLC, Kalamazoo, MI, John F. Flannery, Fitch, Even, Tabin & Flannery, Chicago, IL, for plaintiff.

Richard A. Gaffin, Miller, Canfield, Paddock & Stone, PLC, Grand Rapids, MI, for defendant.

### OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER

MILES, Senior District Judge.

Plaintiff Lyons Industries, Inc. filed its "Complaint for Declaratory Judgment" in this action on September 22, 1997 seeking a declaratory judgment against defendant American Standard, Inc. that (1) two patents owned by American Standard are unenforceable and/or invalid and/or that Lyons has not infringed the patents; (2) Lyons has not violated the Lanham Act; and (3) Lyons has not violated any common law of unfair competition. The case is currently before the court on a motion by American Standard to dismiss or to transfer venue to the District of New Jersey, where American has filed a patent infringement action against Lyons. Lyons has opposed the motion to dismiss or transfer venue. For the reasons to follow, the court grants the motion to dismiss.

### I

Lyons is a Michigan corporation which has its principal place of business in Dowagiac, Michigan. Lyons' business includes designing, developing, and manufacturing kitchen and bathroom fixtures and related products.

American Standard is a Delaware corporation having its principal place of business in New Jersey. The company is a well-known manufacturer of plumbing products, including kitchen and bathroom fixtures.

In the fall of 1996, Lyons designed and developed a new line of kitchen sinks. It began manufacturing the sinks later that year, and launched its first sale of the new line in stores in Wisconsin under the "Pan Handler" trademark. In connection with its launch of the "Pan Handler" line in Wisconsin stores, Lyons designed and developed point-of-purchase promotional and merchandising materials and displays. Lyons' investment in the new line represented a considerable expenditure of design efforts and resources for the company.

In the spring of 1997, The Home Depot selected the "Pan Handler" line for sale in its stores nationwide, including stores located in New Jersey as well as in this district. Having secured Home Depot as a customer, Lyons designed and developed promotional materials, which were based on the materials which Lyons had already used in Wisconsin.

On September 17, 1997, Lyons received a letter from patent counsel for American Standard. In the letter, American Standard expressly accused Lyons of infringing two patents owned by American Standard. Specifically, American Standard contended that Lyons' "Pan Handler" line incorporated the designs covered by the two patents, which American Standard had incorporated into its "Silhouette" kitchen sinks. American Standard's letter also accused Lyons of directly copying American Standard's marketing and promotional materials. The letter demanded, in no uncertain terms, that Lyons

> ... immediately cease and desist from continued manufacture, distribution, use, display and sale of the sinks complained of herein which appropriate the designs protected by the design patents, and that you immediately cease and desist from using your marketing materials or any others which are likely to confuse and/or deceive customers.

Finally, the letter stated that

> In view of the importance of this matter and the ongoing irreparable harm being

done to our client by your activities, in order to avoid litigation, we must have a response from you within five (5) days advising that the sinks and marketing materials complained of will be withdrawn.

Five days later, on September 22, 1997, Lyons filed the present action. Although Lyons requested that a summons be issued as to American Standard, Lyons did not immediately serve the complaint, nor did it notify American Standard's patent counsel that the action had been filed. Instead, later that evening, just hours after filing its complaint, Lyons' counsel communicated with American Standard's patent counsel by facsimile, in a letter which read in its entirety as follows:

> We represent Lyons Industries, Inc. in its intellectual property matters. We have just received your letter of September 17, 1997 from our client for review. We will contact you in a few days to discuss this matter.

On the following day, September 23, 1997, the parties' respective attorneys tried unsuccessfully to contact each other. On September 24, 1997, Lyons' attorney left the following voice mail message for American Standard's attorney:

> ... I am calling on behalf of Lyons Industries. We need an opportunity, if you could give me a call back, I would greatly appreciate it. What I am looking for is to just to discuss on the surface, your letter to [Lyons] of I believe September 17th, and looking for some time for us to take an in depth look at that. If you could give me a call back, my number is
>
> ...

Counsel for American Standard returned this telephone call on the following day, September 25, 1997. During the conversation, counsel for Lyons expressed the desire of his client to avoid litigation and to enter into a license agreement or make some other form of payment to alleviate American Standard's concerns. Counsel for American Standard promised to convey Lyons' interest to his client. Nothing further was apparently discussed, for the record contains no indication that Lyons' counsel bothered to mention the complaint Lyons had filed three days earlier in Michigan.

On September 30, 1997, American Standard filed a complaint in the United States District Court for the District of New Jersey. *American Standard, Inc. v. Lyons Industries, Inc.*, No. 2:97cv04806 (Hon. William G. Bassler). In the complaint, American Standard asserted claims of patent infringement (Count I), federal unfair competition (Count II), unfair competition under New Jersey common law (Count III), and unfair competition under New Jersey statutory law (Count IV). On this same date—September 30, 1997—Lyons' attorneys for the first time advised counsel for American Standard that Lyons had already filed suit in Michigan.

American Standard served Lyons with a copy of the complaint in the New Jersey action on October 7, 1997. On October 30, 1997, American Standard filed a motion in that action seeking a preliminary injunction enjoining Lyons, during the pendency of the proceeding, from, among other things, making or offering for sale any sinks, including the "Pan Handler," which infringe American Standard's two patents.[1]

In the meantime, on October 14, 1997, American Standard filed its present motion in this case to dismiss or transfer. On October 16, 1997, this court issued an order setting a Fed.R.Civ.P. 16 conference for November 10, 1997. This order provided in pertinent part that

> ... At least seven days before the Rule 16 conference, counsel ... shall meet to discuss the following: the nature and basis of the parties' claims and defenses, the possibilities for a prompt settlement or resolution of the case, the formulation of a discovery plan, and ... other topics listed below. Plaintiff shall be responsible for scheduling the meeting, which may be conducted in person or by telephone. After the meeting, the parties shall prepare a

---

1. Lyons has filed a cross-motion in the New Jersey action seeking dismissal, stay, or transfer of that case to this district. Both parties' motions in the New Jersey action remain pending as of this date.

joint status report which must be filed three (3) days prior to the conference . . . .

On November 7, 1997, three days before the scheduled conference in this case, American Standard filed its own individual status report, contending that it was forced to do so because Lyons was "in default of its responsibility to schedule and conduct a planning meeting prior to the Rule 16 conference." American Standard's November 7, 1997 submission also indicated that the report was not joint "due to plaintiff's apparent abandonment of the case." Lyons filed its opposition to the motion to dismiss or transfer on November 10, 1997. Lyons has not filed a motion for preliminary injunctive relief in this action, although its complaint included a prayer for injunctive relief. Complaint for Declaratory Judgment at 6, ¶ G (praying that the court "preliminary [sic] and permanently restrain and enjoin AMERICAN . . . from claiming or asserting that LYONS' sinks, displays, marketing and promotional materials are or may be an infringement of AMERICAN's patents and/or violation of any other proprietary interest").

## II

■ Although the court has subject matter jurisdiction over this action, its acceptance of that jurisdiction is not obligatory. Lyons filed its complaint under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The exercise of jurisdiction to grant declaratory relief in actions filed under the Act is discretionary in nature. As stated in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995):

Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration[.]' . . . We have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' . . . When all is said and done, we have concluded, 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.' . . .

. . . By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial . . . . In the declaratory judgment context, the normal principal that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

115 S.Ct. at 2142–43.[2]

■ American Standard argues that the court should dismiss this action because Lyons engaged in bad faith forum shopping by secretly filing this action, while lulling American Standard into believing that Lyons was interested in settlement negotiations. American Standard contends that Lyons' actions prove that its intent in filing this proceeding was merely to pre-empt American Standard's choice of forum. To reward Lyons for its forum shopping, American Standard argues, would deter parties from seeking in good faith to resolve a dispute without judicial intervention.

Lyons characterizes its intent in filing this action far differently. Although its com-

2. Courts have identified the following factors relevant to the propriety of granting a declaratory judgment:

whether it would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of 'procedural fencing'; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.
*Hanes Corp. v. Millard*, 531 F.2d 585, 591 n. 4 (D.C.Cir.1976) (citing 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2759, at 784 (1973)).

plaint was conspicuously devoid of such allegations, Lyons now contends that

... The present controversy arises from express and repeated accusations by American Standard to Lyons Industries and its customers that the new line of kitchen sinks sold by Lyons Industries infringes design patents of American Standard, and that certain point-of-purchase marketing materials of Lyons Industries are being used to pass off its sinks as those of American Standard....

... Thus, to prevent any further negative impact from American Standard's actions, it was necessary for Lyons Industries to bring this declaratory judgment action in order to protect legitimate business interests in its new line of kitchen sinks, to preserve its reputation and to prevent further derogatory statements to and interference with its customers....

Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer at 1–2. What is problematic about these more recent contentions of Lyons is that its "Complaint for Declaratory Judgment" does not mention American Standard's alleged "repeated accusations" of infringement or "derogatory statements" to Lyons' customers. Perhaps American Standard did engage in such con-

duct before Lyons filed its complaint. However, if American Standard did so, any allegations asserting or supporting a cause of action against American Standard based on such conduct were omitted from the complaint.[3] One's first instincts are frequently the most reliable ones. In this case, because Lyons' complaint omitted any reference to supposed customer intimidation by American Standard, the court finds that this supposed conduct is not what motivated Lyons to file this action.

Indeed, all of Lyons' actions (or rather inaction) from the date it filed its complaint until the present suggest that in filing this declaratory judgment proceeding, Lyons' true interest was in obtaining a procedural advantage over the larger American Standard, and not in putting an end to the intimidation of Lyons' customers. Lyons filed its complaint, yet it waited to notify American Standard—whose patent counsel had been in direct contact with the company—that it had done so. Lyons has not moved for preliminary injunctive relief, nor has it even presented any evidence that it has ever requested American Standard to cease its purported intimidation of Lyons' customers. Finally, Lyons' apparent failure to take the initiative in satisfying the parties' Rule 16 obligations

**3.** Lyons' belated contention that this controversy arose not from American Standard's September 17, 1997 cease and desist letter but from the company's "repeated accusations" and "defamatory statements" to Lyons' customers is based on the "Declaration" of its president, Donald Lyons, filed in support of its opposition to the present motion. According to Mr. Lyons, his company was aware

... [w]ell before the filing of the instant action that American Standard began in about July 1997 to issue harassing threats and derogatory statements to customers of [Lyons], including The Home Depot. These customers were admonished by American Standard for purchasing Lyons Industries' new line of kitchen sinks and were advised by American Standard that it intended to sue [Lyons] for patent infringement. American Standard's threats have yet to cease and have expanded to include other customers of [Lyons], such as Menards....

Customers of [Lyons] are taking seriously American Standard's statements and already have made inquiries and expressed their concerns to [Lyons] regarding American Standard's statements.

Declaration of Donald Lyons, paragraphs 8, 9. According to Mr. Lyons, by the (footnote cont'd)

(cont'd) time the company filed its complaint in this action, it "could not afford to wait any longer to see whether American Standard would cease its pattern of customer intimidation and derogatory statements regarding [Lyons] without risking damage to sales of the new line of kitchen sinks and, ultimately, its business reputation." *Id.,* paragraph 17.

Had Lyons' complaint included a cause of action based on these allegations, the court would be inclined to credit them. However, because the allegations did not make their appearance in this action until after American Standard filed its own infringement action and moved for the dismissal of this one, Mr. Lyons' statements seem pathetically lacking in truthfulness. Moreover, the court suspects that if Lyons truly wished to secure the cessation of the alleged customer intimidation, Lyons would have—well before this juncture—been in a position to provide some documentation, apart from rank hearsay, that the intimidation was actually taking place. The belated appearance of the allegations of customer intimidation, combined with their unsubstantiated, hearsay quality cause the court to find that the allegations are not credible.

strongly indicates that the company considers this action to be little more than a proverbial foot in the door of this district.

"Certainly one of the most common and indisputably appropriate uses of the declaratory judgment procedure is to enable one who has been charged with patent infringement to secure a binding determination of whether proposed conduct will infringe a patent in question without waiting until be becomes the defendant in an actual infringement suit." *Hanes Corp. v. Millard*, 531 F.2d 585, 592 (D.C.Cir.1976). In such circumstances, "[t]he purpose of granting declaratory relief to one potentially liable for infringement is to allow him to know in advance whether he may legally pursue a particular course of conduct." *Id.* However, the circumstances presented here indicate that this purpose is largely absent in this proceeding. Lyons began manufacturing and distributing its "Pan Handler" approximately one year before it filed this action, and by its own admission, it put the sinks into nationwide distribution months before it filed its complaint. By the time it did file, Lyons had already embarked on the course of action which would subject it to liability, if it was to be liable; the company's substantial expenditure of resources on its new line was already in peril. Accordingly, the purpose of granting declaratory relief to a potential infringer is largely absent here. Instead, Lyons "is in the position of one who desires an anticipatory adjudication, at the time and place of *its* choice, of the validity of the defenses it expects to raise against patent-related claims it expects to be pressed against it." *Id.* However, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *Id.* at 592–93 (footnote omitted).

■ The court is aware of the "general rule" which "favors the forum of the first-filed action[.]" *Genentech, Inc. v. Eli Lilly*

*and Co.*, 998 F.2d 931, 937 (Fed.Cir.1993). However, where a "sound reason" exists "that would make it unjust or inefficient to continue the first-filed action[,]" the court's discretion "tempers the preference for the first-filed suit." *Id.* at 938. Under the circumstances presented here, where the facts indicate that Lyons sought to protect itself by selecting the forum for resolution of potential claims against it, while initiating negotiations, the court views Lyons' complaint as "a tactical measure filed in order to improve [Lyons'] posture in the ongoing negotiations—not a purpose that the Declaratory Judgment Act was designed to serve." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed.Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). *See also Serco Serv. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed.Cir.1995) (district court did not abuse its discretion by dismissing declaratory action in favor of patentee's later-filed action; court was entitled to consider that plaintiff intended to preempt patentee's infringement suit); *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F.Supp. 144, 148 (D.Mass.1993) (defendant's motion to dismiss declaratory judgment action granted; court noted that plaintiff "should not be permitted to take advantage of the fact that [the patentee] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [plaintiff's] responses to its letters").

Finally, the court must consider that another action is currently pending in the District Court in New Jersey which could resolve the entire controversy between the parties. Although Lyons contends that it will be inconvenienced by having to defend itself at such a distance from its place of business, the court observes that this inconvenience to it will be no greater than the inconvenience to be suffered by American Standard should it be forced to litigate in Michigan, at a substantial distance from its principal place of business.[4] Under the cir-

---

4. Lyons argues that it will be prejudiced (rather than merely inconvenienced) in having to litigate in New Jersey. Specifically, Lyons argues that one of its "critical" witnesses, Betsy Tavernier,

who designed its marketing and promotional materials for the sinks, has recently resigned from the company and is currently residing in Michigan within the subpoena power of this court.

cumstances, convenience to the parties is not a sufficient reason for the court to exercise its discretion to retain this action. In contrast, Lyons' procedural fencing and inequitable if not outright deceptive conduct do present sound reasons, in the court's view, not to retain it.

### III

The court hereby dismisses this action without prejudice in its entirety. In view of the court's decision to decline jurisdiction to enter the declaratory judgment sought by Lyons, the court denies as moot American Standard's motion to transfer.

However, Lyons has not offered any persuasive indication that Ms. Tavernier is likely to be unavailable to her former employer as a witness in the New Jersey action.